OPINION OF THE COURT
Beverly S. Cohen, J.
The plaintiff Standard Security Life Insurance Company of New York moves to strike the answers or to dismiss the counterclaims of and for summary judgment against the defendants Forest Bedell, Quality Pension Consultants, Inc., and Garna Planning Corporation, and to restore the above action to the Trial Calendar.
The defendants Forest Bedell, Quality Pension Consultants, Inc., and Garna Planning Corporation cross-move to strike the complaint and to sever their counterclaims.
The defendants are insurance agents, brokers, and pension consultants. They advised certain of their clients to remove life insurance placed with the plaintiff as a funding medium for their pension plan and to replace it with other investments. The defendants allege that this was done in view of certain changes in the law to save their clients’ money.
*260 The plaintiff, a life insurance company, sues for injunction, accounting and damages charging the defendants with engaging in unfair competition, misrepresentations, misleading statements and incomplete comparisons. (Insurance Law, §§ 127, 273; 11 NYCRR 51.3.)
The defendant Garna counterclaims for $31,127.18 for commissions earned and for $400,000 in lost commissions. The defendants Bedell, Quality and Garna counterclaim for defamation, interference with business relations, improper solicitation of the defendants’ clients and prima facie tort.
In reply to the counterclaims, the plaintiff claims that no commissions are due and owing under their agreement because Garna’s agency was terminated for cause, and that its communications with policyholders were privileged and truthful.
Section 127 of the Insurance Law prohibits misleading statements by insurance agents to consumers when changing life insurance policies. This section clearly is designed to protect individuals from “twisting” — the practice of switching an insured from one policy to another with no benefit to the insured; the only purpose served being the accrual of commissions to the insurance agent.
The Superintendent of Insurance, in 1971, promulgated Part 51 of the Insurance Regulations (11 NYCRR Part 51) to implement section 127 of the Insurance Law by establishing comprehensive disclosure procedures to be observed by insurance agents when encouraging an individual to replace an insurance policy. This allows a consumer once in possession of all the information to make an informed decision concerning which policy is in his or her own best interests. Section 51.3 of title 11 of the Official Compilation of Codes, Rules and Regulations of the State of New York exempts insurance agents from complying with the provisions of that regulation and section 127 of the Insurance Law when the replacement insurance is provided under a group insurance policy (11 NYCRR 51.3 [a] [2] [i]).
In such a case, the regulation requires “full and complete disclosure of all material facts” rather than the specifically detailed complete comparison required for individual re *261 placement policies under the statute and the regulation. A review of the reports prepared by defendants for Pilot Gas & Heat Service Corp., the main client in controversy, demonstrates that Pilot had sufficient information to make an intelligent and informed decision as to which insurance policy was best suited to its needs. The defendants provided Pilot with narrative reports and computer printouts comparing the monthly salary, monthly pension benefit, death benefit, annual and total premium and the difference in cash values for the various insurance policies.
This regulation exempting group life insurance follows the provisions of the National Association of Insurance Commissioners (NAIC) Life Insurance Replacement Model Regulation adopted by the NAIC in 1978. This model regulation was proposed by the advisory committee on replacement insurance as an “affirmative and workable solution [to the replacement issue] that seeks to serve the consumer’s interest first and deals reasonably with agents and all types of insurers in terms of the requirements and responsibilities it imposes on them” (1 Proceedings of the Nat Assoc of Ins Comrs [1979], p 573).
The Superintendent of Insurance acted within the broad boundaries of his authority in enacting 11NYCRR Part 51. Section 10 of the Insurance Law grants the superintendent any powers which may be “reasonably implied” from the statute. Furthermore, section 21 of the Insurance Law grants the superintendent wide authority to “ ‘prescribe, in writing, official regulations, not inconsistent with the provisions of this chapter * * * interpreting the provisions of the chapter’ * * * [C]ourts have consistently recognized that these provisions vest the superintendent ‘with broad power to interpret, clarify, and implement the legislative policy’.” (Ostrer v Schenck, 41 NY2d 782, 785, citing Breen v Cunard Lines S. S. Co., 33 NY2d 508, 511.)
Group insurance policies, in contrast to individual policies are administered by an employer or trustee who may be presumed to have considerably more expertise and sophistication in the areas of insurance than the average consumer. The sale of a group insurance policy is a commercial transaction as distinguished from the sale of an individual policy which is a consumer transaction. The *262 individuals covered under a group policy are therefore protected from the possibility of “twisting” by the insurance agent.
Part 51 of the Insurance Regulations (11 NYCRR Part 51) protects the individual consumer of life insurance from the unscrupulous practices of insurance agents. This goal is consistent with section 127 of the Insurance Law; therefore, the superintendent was within his powers when he promulgated 11 NYCRR Part 51.
The policies in question fall within the category of group life insurance and as such are exempted by 11 NYCRR 51.3 from the disclosure requirements established in section 127 of the Insurance Law.
Section 211 of the Insurance Law relied on by plaintiff, applies only to insurers and thus has no application to defendants.
Accordingly, summary judgment is granted in favor of the defendants dismissing the complaint. Defendants’ counterclaims raise numerous issues of fact which must be decided at a trial (CPLR 3212). Consequently, these counterclaims are severed.