Joseph **BUCCINO, Julius Seide and Wilbur Hasslinger, as Fiduciaries, Participants and Beneficiaries of Pressroom Unions-Printers League Income Security Fund, Plaintiffs,**

v.

**CONTINENTAL ASSURANCE CO., et al., Defendants.**

**George S. KRIEGLER, et al., Third-Party Plaintiffs,**

v.

Julius **BRISKIE, et al., Third-Party Defendants.**

**No. 82 Civ. 5530 (RLC).**

United States District Court, S.D. New York.

Dec. 29, 1983.

Morgan, Lewis & Bockius, New York City, for plaintiffs; Noel Arnold Levin, Mark Edward Brossman, John F. Lauro, New York City, of counsel.

Lans, Feinberg & Cohen, New York City, for defendants and third-party plaintiffs;

Robert Stephan Cohen, Deborah E. Lans, Ira Lichtiger, New York City, of counsel.

**ROBERT L. CARTER, District Judge.**

Plaintiffs allege breaches of fiduciary duty in violation of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA"), common law fraud and breach of fiduciary duty, and violations of the General Business and Insurance Laws of New York. Defendants George S. Kriegler, Raymond M. Kriegler (now deceased), Benjamin A. Kriegler, and Continental Assurance Co. move under F.R.Civ.P. 56 for summary judgment dismissing the complaint. For the reasons that follow, the motion is granted in part and denied in part.

Plaintiffs are participants in and beneficiaries and fiduciaries of the Pressroom Unions-Printers League Income Security Fund (the "Fund"), an employee benefit plan subject to the provisions of ERISA, 29 U.S.C. § 1003(a). The Fund was established in May, 1971 to provide life insurance and mutual fund benefits to the members of Local 51 of the New York Printing Pressmen's & Offset Workers Union. Several other unions joined the Fund thereafter.

Plaintiffs' central contention is that beginning in 1971, George and Raymond Kriegler, acting in concert with Continental, defrauded and breached their fiduciary duties to the Fund by inducing it to buy and retain individual, permanent, whole life insurance policies, rather than a single group policy. Plaintiffs contend that the Krieglers, who advised the Fund and acted on its behalf in insurance matters, knew that individual policies, costing more than a group policy without providing superior benefits, were inappropriate for the Fund, but concealed their knowledge and made representations to the contrary because individual policies yielded greater premiums for Continental, the insurance underwriter, and greater commissions for the Krieglers than the proper policy would have. Plaintiffs also allege that after being paid commissions by Continental on the Fund's initial purchase of insurance, the Krieglers continued to receive money from the insurance company, as salary or in the form of reimbursement for office expenses. Plaintiffs contend that this fraudulent scheme, whereby the insurance company received inflated premiums from the Fund, and the Krieglers, Fund fiduciaries, received salary or other compensation from the insurance company, continued until mid-1980.[1]

**I Accrual of the Breach of Fiduciary Duty Claims**

Defendants do not, for the purpose of this motion, dispute that they were fiduciaries or that they breached their fiduciary duties, but they contend that plaintiffs' action, filed August 20, 1982, is barred by ERISA's statute of limitations.[2] Defend-

---

1. In addition to George Kriegler, Raymond Kriegler and Continental, plaintiffs have also named Reserve Life Insurance Co., its subsidiary American Progressive Life & Health Insurance Co., Benjamin A. Kriegler and Labor Security Programs, Inc. ("LSP") as defendants. Reserve and Progressive took over the Fund's insurance business from Continental in July, 1979. Plaintiffs allege that the same fraudulent scheme continued after the change in insurers. Plaintiffs claim that Benjamin Kriegler was a Fund fiduciary and that he breached his duty by failing to take steps to terminate the allegedly unlawful and imprudent insurance arrangement. The Krieglers allegedly did business through LSP, a corporation of which George and Raymond Kriegler were shareholders and officers.

2. 29 U.S.C. § 1113 provides:
 (a) No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of
 (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
 (2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this subchapter;
 except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

ants' principal argument is that the "last action which constituted a part of the breach or violation," 29 U.S.C. § 1113(a)(1), occurred in 1971 when the initial decision was made to acquire individual life insurance policies. The payment of excessive premiums pursuant to those policies, defendants maintain, "simply flowed from the 1971 purchase decision" and did not give rise to new, independent wrongs. Defendants' Memorandum, p. 23. Therefore, under ERISA's six year statute of limitations, this action has been barred since 1977.

The flaw in defendants' argument is that as Fund fiduciaries they were under a continuing obligation to advise the Fund to divest itself of unlawful or imprudent investments. Their failure to do so gave rise to a new cause of action each time the Fund was injured by its continued possession of individual policies, that is, each time it made a premium payment. *See, Morrissey v. Curran*, 567 F.2d 546 (2d Cir.1977).

In *Morrissey*, plaintiffs brought an ERISA action based upon an investment made well before the statute took effect in 1975. The District Court dismissed for lack of subject matter jurisdiction, but the Second Circuit held that although ERISA could not be applied retroactively, employee benefit plan fiduciaries beginning in 1975 acquired a duty to review plan investments and to dispose of those pre-ERISA holdings which were improper. Thus it was an actionable breach of fiduciary duty under ERISA for the plan's trustees to have failed to divest the plan of the challenged investment even though the trustees were immune from suit for the original pre-ERISA investment decision. Similarly, in this case, although the statute of limitations may protect defendants from liability for the initial purchase decision and for subsequent failures to take corrective action prior to August 20, 1976, (*see* Part II), it does not bar suit for defendants' continued failure to take steps to terminate the Fund's insurance arrangement after that date.

Defendants would construe *Morrissey* narrowly as holding not that plan fiduciar-

ies have an ongoing obligation to rid their plans of illegal or unwise investments, but only that they had a one-time duty to review pre-ERISA investments when the statute became effective on January 1, 1975. If they violated this latter, narrow duty, defendants argue, the statute of limitations expired in 1981. The rule defendants suggest would recognize no obligation on the part of a plan fiduciary to dispose of unsound investments once he had been neglectful for six years, because only the initial failure to act, not subsequent failures, would give rise to a cause of action, and that action would be time barred. Nothing in *Morrissey* or any subsequent case, however, supports such a constricted interpretation of an ERISA fiduciary's duty to purge a benefit plan of bad investments. *Trustees of the Retirement Plan of the Pittsburgh Press Company and Pittsburgh Mailers Union Local No. 22 v. Eqibank, N.A.*, 487 F.Supp. 58, 62 (W.D.Pa. 1980) (interpreting the *Morrissey* Court as "reasoning that ERISA imposed a continuing duty to review and liquidate improvident investments"), *appeal dismissed*, 639 F.2d 776 (3rd Cir.1980); *see, e.g., O'Neil v. Marriott Corp.*, 538 F.Supp. 1026, 1033 (D.Md.1982); *Marshall v. Craft*, 463 F.Supp. 493, 496–97 (N.D.Ga.1978).

Defendants' interpretation would be inconsistent with ERISA's stringent standards of fiduciary conduct and with the common law "prudent investor" rule codified by ERISA. 29 U.S.C. § 1104(a)(1)(B). Under the "prudent investor" rule, a fiduciary has the duty "from time to time to examine the state of the investments to see whether any of them have become such that it is no longer proper to retain them." III A. Scott, *The Law of Trusts* § 231 (1967). If defendants failed, for ten years, to inform the Fund that its insurance plan was unlawful or otherwise improper, they continuously and repeatedly violated their fiduciary duties under ERISA. Only those violations that occurred more than six years before this action was filed are time barred.

The non-ERISA cases relied upon by defendants are not to the contrary. In *Korn v. Merrill*, 403 F.Supp. 377 (S.D.N.Y.1975) (Carter, J.), *aff'd*, 538 F.2d 310 (2d Cir. 1976), plaintiff brought a derivative suit on behalf of an investment fund attacking, *inter alia*, the legality of an investment advisory agreement entered into by the fund in connection with a merger between the advisor and a third party. Plaintiff maintained that even if his challenge to the merger and the agreement were time barred, he could still recover damages for subsequent payments made by the fund to the advisor pursuant to the agreement. This Court rejected that argument, holding that the payments were not independently actionable because plaintiff had alleged no wrongful conduct on the part of any defendant after the merger. 403 F.Supp. at 388. The Court noted that the advisory agreement had been re-approved annually and that if such re-approvals were wrongful they might have generated a cause of action, but plaintiff did not raise that issue. He complained of no acts subsequent to the merger and hence had no grounds on which to recover for the payments. In contrast, plaintiffs here have complained of defendants' post-August 20, 1976 failure to take any steps to terminate the Fund's insurance arrangement, a breach of their fiduciary duty independent of the original purchase of the individual policy insurance coverage.

Similarly, in *Lowell Wiper Supply Co. v. Helen Shop, Inc.*, 235 F.Supp. 640 (S.D.N.Y.1964) (Weinfeld, J.), it was held that rental payments made pursuant to an improper sublease were merely elements of plaintiff's damages, not independently actionable wrongs. Again, no wrongful conduct, only the payment of monies owing under contract, was alleged to have occurred after the initial agreement was signed. Here, defendants were obliged to terminate the Fund's allegedly wrongful insurance policies. They were under no contractual obligation to maintain the improper insurance arrangement and if they did so, they repeatedly violated their fiduciary duty.

Finally, the Court is unpersuaded that its holding, that an employee benefit plan fiduciary's failure to act to eliminate an illegal or imprudent investment gives rise to a new cause of action each time the plan is injured by the fiduciary's neglect, is inconsistent with the important policies that lie behind statutes of limitations. *See, Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980) (statutes of limitations reflect legislatures' and courts' judgment that there comes a point at which delay in asserting a claim is likely to impair accuracy of fact-finding process or upset settled expectations that claim will be barred regardless of its merits). Defendants' contention that this rule would permit a lawsuit challenging an investment to be brought "fifty years or more" after the fact is incorrect. Defendants' Reply Memorandum p. 4. While new causes of action may periodically accrue if a fiduciary continually fails to dispose of an inappropriate investment, the statute of limitations begins to run on each such cause of action as it accrues. Thus, if a suit were brought under ERISA challenging the acquisition and retention of a fifty year old investment, to use defendants' example, only the causes of action for failure to divest which accrued over the six years prior to the suit would not be time barred. The propriety or impropriety of the initial investment decision and the first forty-four years of retention would be irrelevant. No stale claim would be litigated, but, conversely, the fiduciary's breach of duty fifty years ago would not serve to shield him from liability for his most recent transgressions. Applying this analysis to the case before the Court, absent fraud or concealment (*see* part II), plaintiffs' claims for breach of fiduciary duty are barred as to all alleged wrongs occurring before August 20, 1976, but unless plaintiffs had actual knowledge of the breach (*see* Part II), the statute of limitations does not bar their action to the extent that it is based upon defendants' failure to terminate the al-

legedly unlawful and imprudent insurance policies after that date.[3]

## II *Fraud, Concealment and Discovery*

ERISA provides that in cases of fraud or concealment, the statute of limitations expires six years after the discovery of the fiduciary's breach of duty. 29 U.S.C. § 1113. Plaintiffs allege that the Fund was induced to acquire and hold individual insurance policies through defendants' fraud, that they learned of the fraud only in 1980, and therefore that their claims are not barred even with respect to pre-August 20, 1976 events. Defendants counter first, that there is no triable issue of fact with respect to plaintiffs' allegations of fraud and concealment, and second, that even if there was fraud or concealment, the evidence submitted on this motion proves that plaintiffs had discovered the true facts by August 20, 1976. Defendants conclude that the Court should rule either that the "fraud and concealment" aspect of ERISA's statute of limitations is inapplicable to this case or that plaintiffs' discovery of the alleged fraud before August 20, 1976 bars the action even under that branch of the statute.[4]

■ Defendants must carry a heavy burden before the Court can dismiss plaintiffs' fraud and concealment allegations without trial. Defendants must show that even when all ambiguities in the evidence are resolved, and all inferences drawn in favor of plaintiffs, there are no material issues genuinely in dispute. *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4 (2d Cir.1983); *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975). Plaintiffs cannot rest their opposition to defendants' motion on mere conclusory allegations, *Schering, supra; Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980), but neither do they need to prove their case to defeat the motion. The Court will not resolve issues of fact on this summary judgment motion, but only determine if such issues exist. *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor"*, 691 F.2d 603, 606 (2d Cir.1982).

■ The courts have been especially reluctant to grant summary judgment when questions of fraud and its discovery have been at issue, *see, Teledyne Industries, Inc. v. Eon Corp.*, 373 F.Supp. 191 (S.D.N.Y.1974) (Bauman, J.), and even more so when a complex, multi-party fraudulent scheme has been alleged. *See, Associated Hardware Supply Co. v. Big Wheel Distributing Co.*, 355 F.2d 114 (3rd Cir.1965). The questions of defendant's intent, plaintiff's reasonable reliance, knowledge of material facts and diligence in discovering them do not readily lend themselves to

---

**3.** This analysis applies to plaintiffs' state breach of fiduciary duty claim as well. Under New York's six year statute of limitations, CPLR 213(1), plaintiffs' claim is barred with respect to events before February 17, 1976, not August 20, 1976, however, because the state claim was interposed for statute of limitations purposes when a similar action was brought against defendants in this Court in the name of the Fund. CPLR 205(a). That action was dismissed for lack of subject matter jurisdiction. *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.*, 3 E.B.C. 1946 (S.D. N.Y. June 3, 1982) (Conner, J.), *aff'd*, 700 F.2d 889 (2d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983). Although the earlier action was filed on January 29, 1982, the summons was not served until February 17. Under New York law, a claim is interposed upon service of the summons, not when the complaint is filed, as under F.R.Civ.P.

3. CPLR 203(b). New York law controls on this point. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980).

**4.** For the same reasons, defendants seek summary judgment on plaintiffs' state fraud claim. Plaintiffs' state claim is time barred (with respect to events before February 17, 1976) under the New York statute of limitations if plaintiffs "or the person[s] under whom [they claim] discovered the fraud, or could with reasonable diligence have discovered it" before February 17, 1980. CPLR 203(f) and 213(8). The question of when plaintiffs had "actual knowledge" of the breach of fiduciary duty is also important, regardless of the existence or nonexistence of fraud or concealment. Plaintiffs' ERISA (but not state) causes of action for breach of fiduciary duty which accrued before August 20, 1979 are barred if plaintiffs had such knowledge by that date. 29 U.S.C. § 1113(a)(2).

summary disposition. Caution in granting summary judgment is counseled, as well, by the Second Circuit's observation that "[w]hen dealing with the statute of limitations, there is a line of cleavage not always clearly discernible between conduct which is a breach of fiduciary duty and conduct which is intentionally fraudulent." *Renz v. Beeman*, 589 F.2d 735, 749 (2d Cir.1978), *cert. denied*, 444 U.S. 834, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). Not every breach of fiduciary duty, not even if it involves self-dealing or the representation of a party with interests adverse to those of the party to whom the fiduciary owes undivided loyalty, is a fraud, but the distinction will often turn on the fact-finder's evaluation of the parties' states of mind, an evaluation particularly ill-suited to a motion for summary judgment. *See generally*, 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2730.

■ With these principles in mind, the Court finds that these matters are not so wholly free from doubt as to permit an award of summary judgment. Defendants have introduced a considerable amount of evidence indicating that plaintiffs were, or should have been aware of all material facts prior to August 20, 1976, and plaintiffs have introduced little to support the broad allegations of fraud and concealment in the complaint, yet material factual questions remain. These questions can be resolved only after a trial on the merits.[5]

### a) *Fraud and Concealment*

The essence of plaintiffs' fraud and concealment allegations is that the Krieglers falsely represented that the individual insurance policy package they presented to the Fund was cost efficient and otherwise appropriate for the Fund, and that the premium rates were competitive with those of other companies. Plaintiffs also claim that the Krieglers concealed the true nature of their relationship with Continental

and the fact that they received salary and other benefits from the insurance company. Defendants correctly point out that the documentary, affidavit and deposition evidence submitted on this motion fails to support most of plaintiffs' specific allegations. There is, for example, no evidence indicating that the Krieglers expressly represented "that the Fund was receiving the best benefit package at the lowest rate," "that the Fund's insurance business had been put out for competitive bids," or "that Continental's, Reserve's and Progressive's premium and retention rates were fair and reasonable for the coverage obtained." Complaint ¶ 40. However, there is evidence that the Krieglers urged both the employee and employer representatives whose agreement created the Fund to adopt the individual policy plan offered by Continental and that those representatives relied on the Krieglers' advice in doing so. For example, plaintiff Buccino, a representative of Local 51, and James Horne, a representative of the Printers League of Metropolitan New York, recall, respectively, George Kriegler telling them that the proposed plan was "good" and "good for the participants and for the contributing employers." Brossman Aff. ¶¶ 28, 31.

■ Expressions of opinion by an expert can form the basis of a fraud action when the defrauded party reasonably assumed that the defendant's expertise informed his opinion. Where one party has superior knowledge of the facts, his expression of opinion implies that he knows facts which support that opinion and that he is unaware of anything to the contrary. *Magnaleasing, Inc. v. Staten Island Mall*, 428 F.Supp. 1039, 1042–43 (S.D.N.Y.1977) (MacMahon, J.), *aff'd*, 563 F.2d 567 (2d Cir.1977). Even absent express representations, in view of the Krieglers' expertise and their duty to ensure that the plan they sold to the Fund was reasonable (and that

---

5. Defendants also move to dismiss the state fraud claim on the ground that it was not pleaded with the particularity required by F.R.Civ.P. 9(b). Although the fraud claim was not as precisely pleaded as it should have been, whatever specifics were lacking in the allegations as stated in the complaint have been supplied by the documentary, affidavit and deposition evidence produced in connection with this motion.

their own commissions were reasonable as well), the Fund may have been justified in taking George Kriegler's representation that the plan was "good for the participants and the contributing employers" as a representation that it was appropriate for the Fund and reasonably priced for the coverage. *See, Brink v. Dalesio,* 496 F.Supp. 1350 (D.Md.1980), *modified,* 667 F.2d 420 (4th Cir.1981). Walter M. Colleran, the attorney who drafted the trust agreement establishing the Fund testified to the Fund's reliance on the Krieglers in choosing an insurance package. "[A]ny reference therein to the type of insurance coverage that was to be provided, was set forth at the suggestion of Mr. George Kriegler, who was relied upon as knowledgeable in insurance matters." Colleran Aff. ¶ 4.

The evidence shows that the Krieglers continued to represent the Continental individual insurance plan as appropriate for the Fund. Plaintiffs point to a 1976 letter which defendants allege George Kriegler sent to Timothy Hunt, president of Local 1 of the Paper Handlers and Sheet Straighteners Union, encouraging Local 1 to join the Fund. The letter opined that the cost of the insurance was reasonable if evaluated in terms of the Fund's purposes, and specifically, that the initial investment cost was not too high. Exh. 11 to Brossman Aff. Defendants rely on the same letter, which contrasts the Fund's coverage to the group policies held by most employee welfare plans and acknowledges that the latter are less expensive, as showing that the Krieglers fully disclosed and accurately represented all material aspects of the insurance plan. Whether this representation that the insurance plan was reasonably priced in relation to the benefits it sought to provide was a deliberate misrepresentation or an accurate or good faith opinion given in the context of a full disclosure of the pros and cons of such a plan, is a question of fact to be determined at trial. Moreover, a question of fact exists as to whether the letter is bona fide, as neither Hunt nor any Fund trustee recalls having ever seen it. Brossman Aff. ¶¶ 33–35.

Perhaps the clearest material factual dispute concerns plaintiff Seide's testimony that in 1971, before the Fund was set up, George Kriegler promised him that the insurance package eventually purchased would be "no load", that is, would involve no commission payments, and that "all the money would go into the pot." Brossman Aff. ¶ 8. There is no dispute that commissions were, in fact, paid to George Kriegler by Continental and a statement to the contrary would have been a clear misrepresentation. While defendants are not inaccurate in terming Seide's recollection "unique", Lans Aff. ¶ 33, their challenge to his credibility only reaffirms that a factual dispute exists. *Cf., Beal v. Lindsay,* 468 F.2d 287 (2d Cir.1972).

### b) *Discovery of the Fraud*

Defendants have submitted evidence indicating, *inter alia,* that all premium payments and commissions were properly reported to the appropriate state and federal agencies, a number of plaintiffs and/or other trustees were aware that individual policies were more expensive than group policies and that the Krieglers received salary and other fees from Continental, all before August 20, 1976. Nevertheless, the inherent difficulty in this complex case involving many people, of determining who knew or should have known what when, and what each individual should have concluded from what he knew or should have known, precludes the Court from determining without a trial, when the plaintiffs discovered the fraud, or when they obtained "actual knowledge" of the breach of fiduciary duty.

Although other courts have granted summary judgment on these issues when the facts were particularly clear and unambiguous, such as in those cases in which plaintiff's own allegations contain the facts which prove his awareness of the allegedly misrepresented facts, this case, at this point, is simply not that clear. *See, Arneil v. Ramsey,* 550 F.2d 774 (2d Cir.1977); *Rickel v. Levy,* 370 F.Supp. 751 (E.D.N.Y. 1974). While some Fund officials and par-

ticipants testified that they knew group insurance was cheaper, others did not. The same is true with respect to the Krieglers' relationship with Continental. Moreover, it· is especially difficult to decide, on the basis of the papers submitted, when plaintiffs should have concluded, if such is the case, that the Fund's premiums were too high or that the monies paid to the Krieglers were in exchange for encouraging the Fund to maintain inappropriate insurance. This would be so even were there no dispute over when they learned that group insurance was cheaper or that the Krieglers were salaried employees of Continental. The courts' consistent observation that summary judgment is generally an inappropriate vehicle for determining when a fraud was discovered applies to this case. *Schmidt v. McKay*, 555 F.2d 30 (2d Cir.1977); *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5 (5th Cir.1967); *Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321, 165 N.Y.S.2d 107, 144 N.E.2d 78 (1957).

In sum, although defendants have introduced a considerable body of evidence which indicates that plaintiffs may well be unable to prove fraud or that, on the other hand, defendants will be able to prove plaintiffs' awareness of the fraud prior to August 20, 1976, defendants have not shown that there are no material factual disputes warranting trial. Summary judgment is therefore precluded.

### III *State Statutory Claims*

 Plaintiffs assert claims under sections 5, 127 and 211 of the Insurance Law of New York.[6] Section 5 provides for no private right of action and plaintiffs' claim under that provision is dismissed. Sections 127 and 211 are reciprocal provisions which provide for private claims against insurance agents and insurers, respectively, for misrepresentations, misleading statements and incomplete comparisons in insurance sales. Plaintiffs' claim under § 127 against Continental, the insurer, and under § 211 against the Krieglers, the agents, are dismissed. *Standard Security Life In-*

*surance Company of New York v. Bedell*, 113 Misc.2d 259, 448 N.Y.S.2d 995 (Sup. 1982); *Slote v. Equitable Life Assurance Society of the United States*, 78 Misc.2d 462, 356 N.Y.S.2d 812 (Sup.1974).

 Plaintiffs' remaining claims are subject to the three year statute of limitations for "an action to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in sections 213 and 215." CPLR 214(2). Insurance Law §§ 127 and 211 expressly provide that the private right of action is to recover a "penalty". The exceptions provided by CPLR 213 and 215 have no bearing on this case. Therefore, plaintiffs' claim against Continental under § 211 and against the Krieglers under § 127 are barred except as to any cause of action that may have accrued after February 17, 1979.

Plaintiffs also allege a cause of action under section 349(h) of the General Business Law. Section 349 prohibits unfair and deceptive practices in the conduct of any business and paragraph (h) creates a private right of action for injunctive relief and statutory ($50) or actual damages, whichever are greater. The Court may, in its discretion, increase the award to an amount not to exceed three times the actual damages up to one thousand dollars. Paragraph (h) did not, however, go into effect until June 19, 1980 and defendants argue that it cannot be applied to this case.

It has long been the general rule that only prospective application of a statute is proper absent a clear expression of legislative intent to the contrary, *Gleason v. Gleason*, 26 N.Y.2d 28, 308 N.Y.S.2d 347, 352, 256 N.E.2d 513, 516 (1970); *Mulligan v. Murphy*, 14 N.Y.2d 223, 250 N.Y.S.2d 412, 415, 199 N.E.2d 496, 498 (1964), but an exception exists for "remedial" statutes. *See generally*, McKinney's Statutes § 54. Whether a statute is "remedial" and hence exempt from the presumption against retrospective application is often difficult to discern, but statutes which merely expand

---

**6.** Plaintiffs also cite Insurance Law § 273 in their complaint, but that section is merely defi- nitional. The causes of action arise under sections 127 and 211.

the scope of a remedy or remove procedural bars to the assertion of a cause of action are often given retroactive effect. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); *Mulligan v. Murphy, supra.* For example, a statute giving jurisdiction to the Surrogate's Court to entertain an action by a client seeking restitution from an overreaching attorney was held to be retroactively applicable as it merely made a new forum available for an existing cause of action. *In re di Filippo's Estate,* 162 Misc. 423, 294 N.Y.S. 802 (1937). Statutes correcting defects in existing law, such as that which preserved the constitutional integrity of New York's multiple offender sentencing law by allowing a defendant to challenge the validity of the earlier convictions, have also been applied retroactively. *People v. Cornish,* 21 A.D.2d 280, 250 N.Y.S.2d 233 (1st Dep't 1964). On the other hand, statutes which create a cause of action where none previously existed, or which create new liabilities or obligations, have generally been applied only prospectively. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra; Jacobus v. Colgate,* 217 N.Y. 235, 240–42, 111 N.E. 837, 839 (1916).

Paragraph (h) did not simply modify or augment the remedies provided by section 349 or repair a technical defect in the procedures under the statute. It created an entirely new right of action on behalf of private citizens, where only the ·Attorney General had been able to sue before. It also expanded the potential liability of those who violate section 349. The Attorney General was empowered only to seek injunctive relief and the "restitution of any monies or property". The private right of action allows individuals to seek actual damages and treble damages up to $1,000. This significant, substantive change in the

rights and liabilities of the affected parties militates against retroactive application.

■■■ Plaintiffs argue that the remedial purpose behind section 349 as a whole, discouraging consumer fraud and providing relief for its victims, weighs in favor of the retroactive application of paragraph (h). In this regard, it is noteworthy that section 349, although passed in March, 1970, by its own terms did not become effective until September of that year. Such a postponement of a statute's effective date is evidence of the legislature's desire that it be given prospective application only. *Ocean & Atmospheric Science, Inc. v. Smyth Van Line, Inc.,* 446 F.Supp. 1158, 1159 (S.D.N.Y.1978) (Pollack, J.); *Mulligan v. Murphy, supra.*[7]

■■■ Although the New York Court of Appeals has not passed upon the retroactivity of the amendment to section 349, these considerations lead the Court to conclude that were it to do so, New York's highest court would deny paragraph (h) retrospective application. The only case the Court has found directly on point reaches the same conclusion. *Burns v. Volkswagen of America, Inc.,* 118 Misc.2d 289, 460 N.Y.S.2d 410, 412 (Sup.1982). Accordingly, plaintiffs' claim under General Business Law § 349(h) is dismissed.

### IV *Conclusion*

Defendants' motion for summary judgment dismissing plaintiffs' ERISA claims and their state fraud claim is denied. Plaintiffs' state breach of fiduciary duty claim is barred with respect to events prior to February 17, 1976 and their claims under General Business Law § 349(h) and Insurance Law § 5 are dismissed. Their claim under Insurance Law § 127 is dismissed as against defendant Continental

---

**7.** In their brief, plaintiffs write, "In fact, Governor Rockefeller in his Approval Memorandum stated that the bill 'will provide a means to make the victims of past fraud whole again.'" Plaintiffs' Memorandum p. 52. The implication, that the bill was intended to be retroactive, is not supported when the quote is placed in context. The Governor was referring to the fact

that the bill empowered the Attorney General to sue for restitution, as well as for injunctive relief. By "past fraud", he referred to fraud occurring before the filing of a lawsuit by the Attorney General, not before the bill's effective date. 1970 McKinney's Session Laws of New York 3074.

and their claim under Insurance Law § 211 is dismissed as against the Kriegler defendants. The claims under sections 127 and 211 are barred with respect to events prior to February 17, 1979.[8]

IT IS SO ORDERED.

8. The Secretary of Labor's motion to file a brief as *amicus curiae* is granted.