USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-1140

 LUIS BONILLA, ET AL.,

 Plaintiffs, Appellees,

 v.

 TREBOL MOTORS CORPORATION, ET AL.,

 Defendants, Appellees.
 __________

 RICARDO GONZALEZ-NAVARRO and CONCHITA NAVARRO DE GONZALEZ,

 Defendants, Appellants.
 ______________________

No. 97-1143

 LUIS BONILLA, ET AL.,

 Plaintiffs, Appellees,

 v.

 TREBOL MOTORS CORPORATION, ET AL.,

 Defendants, Appellants.
 ____________________

No. 97-1145

 LUIS BONILLA, ET AL.,

 Plaintiffs, Appellants,

 v.

 TREBOL MOTORS CORPORATION, ET AL.,

 Defendants, Appellees.
 ______________________

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
Campbell, Senior Circuit Judge,

and Boudin, Circuit Judge.

____________________

 Michael J. Rovell and Charles A. Cuprill-Hernandez with whom
Jewel N. Klein, Law Offices of Michael J. Rovell, and Law Offices
of Charles A. Cuprill-Hernandez were on joint brief for defendants
Ricardo Gonzalez-Navarro, Conchita Navarro de Gonzalez, Trebol
Motors Corporation and Trebol Motors Distributor Corporation.
 Allan Kanner with whom Conlee Schell Whiteley, Allan Kanner &
Associates, P.C., Paul H. Hulsey, Frederick J. Jekel, Theodore H.
Huge, Ness, Motley, Loadholt, Richardson & Poole, P.A., Jose F.
Quetglas Jordan, Eric Quetglas Jordan, Zygmunt Slominski, Quetglas
Law Offices, Daniel Harris and Law Offices of Daniel Harris were on
brief for plaintiffs Luis Bonilla, et al.
 
 
 
 
 
 
 July 28, 1998
 
 
 
 
 

 BOUDIN, Circuit Judge. This opinion, the second in a
series of three, is a companion to our decision in Bonilla v. Volvo
Car Corporation, No. 97-1135, decided this day ("Volvo"). That
decision sets forth a description of the litigation, including the
allegations made by the plaintiffs, the course of proceedings, and
the disposition of claims in the district court. This opinion is
directed to the merits appeal of the defendants other than Volvo,
specifically Trebol and the Gonzalez defendants, and the cross-
appeal by the plaintiffs. We assume the reader's familiarity with
the Volvo opinion.
 In the district court, Trebol and the Gonzalez defendants
litigated actively through discovery and summary judgment
proceedings during the four years between the filing of the
complaint and the trial. But, as recounted in Volvo, three days
before the trial scheduled for June 24, 1996, Trebol and the
Gonzalez defendants consented to the entry of default against them
"as to the factual averments of the Third Amended Complaint." 
After the liability verdict and the subsequent damage verdict
against Volvo, Trebol and the Gonzalez defendants resumed their
participation in the case. 
 Whether and to what extent Trebol and the Gonzalez
defendants may have monitored the Volvo trial is unclear, but they
were not invited to participate in the damage phase of the Volvotrial; that phase was itself abbreviated because--despite the
original bifurcation order--the plaintiffs and Volvo relied
entirely on liability-phase evidence and simply presented arguments
to the jury. The jury then assessed damages only against Volvo and
not against Trebol or the Gonzalez defendants. 
 The damage verdict against Volvo was delivered by the
jury on August 1, 1996. On August 19, the plaintiffs filed a
motion to assess damages against Trebol and the Gonzalez
defendants. The next day, August 20, these defendants were given
telephone notice that a hearing on the matter was scheduled for
August 29, nine days hence. The Gonzalez defendants immediately
filed a motion (on August 20) requesting a postponement of the
hearing, pointing to the very short notice and the fact that
counsel would be out of the country taking depositions in Finland
and Spain during the two weeks surrounding the proposed hearing. 
Counsel suggested September 26 and 27 as convenient dates for the
hearing.
 So far as the record reveals, the court denied this
motion for continuance on August 21, but this order was not entered
until August 27. That day, the Gonzalez defendants filed a joint
motion requesting a pretrial conference "prior to the hearing
scheduled for August 29 . . . to discuss the parameter [sic] of the
hearing and to discuss the applicability of a jury." Similarly, on
August 27, the Trebol defendants filed their own motion for a
continuance. Neither motion was acted upon prior to August 29,
when the parties appeared for the hearing, and the district judge
then denied both motions. His rationale, set forth in the order
entered August 27 denying a continuance, was this: "If Trebol and
Gonzalez codefendants were prepared to go to trial on June 24,
1996, they should be prepared for a Hearing on the issue of damages
more than two months later."
 At the August 29 hearing, plaintiffs again relied upon
the evidence presented against Volvo, urging that the defaulting
defendants had abandoned any right to contest that evidence by
failing to appear for the damages phase at the trial. The
defaulting defendants offered to present evidence that the district
court had excused them from attending the liability trial against
Volvo after the default, pointed to the original order for a
bifurcated trial on damages and asserted that they were entitled to
a jury trial on damages against them. They also complained that
the plaintiffs were relying for damage evidence on witnesses from
the Volvo liability trial whom the defaulting defendants had never
had occasion to cross-examine.
 What is most important to these appeals is that the
defaulting defendants also renewed their request for an effective
opportunity to oppose plaintiffs' damage claim. That damage claim,
as we explain below, depended primarily on plaintiffs' contention
that the lower retail prices of Volvo cars in sales on the U.S.
mainland reflected the "real" value of the cars in Puerto Rico. 
The defaulting defendants made a specific offer of proof that, if
allowed to collect and present evidence, they would show that this
price disparity was a common occurrence for luxury car sales and
did not prove the value of the same cars in the Puerto Rico market. 
The court scheduled no further hearing but took the case under
submission. 
 In an opinion and order dated October 7 but entered
October 10, 1996, the district judge determined that Trebol and the
Gonzalez defendants were liable for the same damages assessed
against Volvo by the jury. The court said briefly that the
complaint had charged a conspiracy among all of the defendants and
since the four remaining defendants had defaulted on the complaint,
they were liable for all damages assessed against Volvo on the
ground that a conspirator is responsible for offenses committed by
his fellow conspirators. On October 8, the district court entered
judgment against Trebol and the Gonzalez defendants in the same
amount as that previously entered against Volvo, namely,
$129,591,300. 
 The defaulting defendants' arguments in these appeals
fall into three categories. First, despite their default, they
challenge the adequacy of the allegations in the complaint to set
forth a cause of action. Second, they claim that they were
entitled to a jury trial on damages and that they were improperly
denied an opportunity to present evidence at the damages hearing on
August 29, 1996. Third, Trebol (but not the Gonzalezes) say that
the proceedings against them should have been stayed because the
two Trebol corporate defendants filed for bankruptcy (on September
30, 1996) before judgment was entered (on October 8, 1996).
 The default judgment and the adequacy of the complaint. 
Generally speaking, a default judgment bars the defaulting party
from disputing the facts alleged in the complaint, but it preserves
for appeal arguments of law made below as to whether the facts as
alleged state a claim. 10 Moore's Federal Practice, 55.12[1], at
55-18 to 55-19 (Coquillette et al. eds., 3d ed. 1997); see alsoMcGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 229-30 (1st
Cir. 1980); Alan Newman Prods., Inc. v. Albright, 862 F.2d 1388,
1392 (9th Cir. 1988), cert. denied, 493 U.S. 858 (1989).
 In this case, prior to their default in the district
court, the defaulting defendants presented a barrage of legal
attacks on the complaint in conjunction with motions for summary
judgment, and the district court generally rejected these
challenges in denying the summary judgment motions. Although the
summary judgment motions were directed to the Second Amended
Complaint, the Third Amended Complaint on which the case went to
trial was not different in any respect material here. The
complaint set forth two different claims of fraud against Trebol
and the Gonzalezes.
 The first, rather tersely stated, was that the defendants
had modified or altered 240 DL models by providing some new
accessories and upgraded emblems and then sold these "disguised"
vehicles "as if they were factory made models" and for much more
than the price that the defendants "would have normally charged for
the 240 DL Volvo models with such alterations or modifications." 
The second claim was that the defendants had a statutory duty under
both federal and Puerto Rico law to disclose on a label a range of
material facts that they omitted and failed to disclose, including
the cars' manufacture as DL (rather than GL or GLE) models, the
manufacturer's suggested retail price, the suggested retail price
for optional equipment, and the factory cost of the 240 DL models. 
 In the district court, Trebol and the Gonzalez defendants
made numerous legal attacks on the adequacy of the complaint, but
on this appeal they have confined themselves to three: first, that
the emblem altering practice and addition of port accessories did
not constitute a scheme to defraud and that there was no duty to
disclose that final emblems and certain accessories had been added
in Puerto Rico. Next, they argue that fraud was not alleged with
sufficient particularity in the complaint as required by Fed. R.
Civ. P. 9(b). Finally, the Gonzalez defendants argue that there is
no explicit allegation that they (as opposed to Trebol) made false
representations to customers. 
 The latter two objections need not detain us long. 
Arguably, the complaint did not describe the frauds with sufficient
particularity insofar as it did not identify any individual
instance in which an individual car was sold with a false emblem
and accessories added in Puerto Rico nor identify any individual
automobile label with specific deficiencies. See Beringer, 633
F.2d at 228. Similarly, the complaint did not point out the
alleged connection between the individual Gonzalez defendants and
any specific act of wrongdoing, making only general assertions that
the Gonzalezes held important ownership, executive, and employee
positions in Trebol.
 However, plaintiffs' opposition to the motion for summary
judgment and related discovery material cited gave sufficient
notice of the fraudulent acts alleged and of the basis for
associating the Gonzalezes with their alleged commission. A remand
at this stage to allow an amendment to the complaint to restate
this information would be silly. We therefore follow those courts
that, in special circumstances and only for Rule 9(b) purposes,
have treated the plaintiffs' opposition to summary judgment--of
which the defaulting defendants had notice--as a de facto amendment
or supplement to the complaint's allegations. E.g., Elias Bros.
Restaurants, Inc. v. Acorn Enters., Inc., 831 F. Supp. 920, 922 n.3
(D. Mass. 1993); Buccino v. Continental Assurance Co., 578 F. Supp.
1518, 1524 n.5 (S.D.N.Y. 1983).
 Once past the Rule 9(b) objection, there is no doubt that
the complaint states at least one valid cause of action under RICO
on a fraud theory. Trebol had clear-cut obligations to supply
label information under Law 77 and, so far as appears, under the
Monroney Act as well. The complaint, as supplemented by the
opposition, charges a failure to include full and truthful
information; it implicates the Gonzalez defendants; and it asserts
use of the mails and injury to plaintiffs. While this is enough to
defeat dismissal, the adequacy of the emblem and port accessory
claim deserves independent attention because damages could be
affected by the content of the fraud claim or claims that are
upheld.
 The claim is really two claims in one. In presenting the
claim, the complaint at least suggests that the defendants had an
obligation--in order to avoid fraud--to tell customers that the
emblems and accessories had been added in Puerto Rico rather than
in the Volvo factory. This reading of the claim was fully
developed by plaintiffs in opposing summary judgment and was
pursued against Volvo at trial. For reasons set forth in our Volvoopinion, slip op., pp. 13-19, we do not think that this version of
the claim sets forth a valid cause of action for fraud. Our
reasons apply equally to the defaulting defendants whose attack on
the complaint in the district court adequately preserved the issue
for appeal.
 However, the same language in the complaint even more
clearly sets forth a different theory of fraud, namely, that as a
factual matter there is such a thing as a "real" GL or GLE and that
the cars actually sold by Trebol in Puerto Rico were "in reality"
simply DLs fraudulently disguised as the higher priced GLs and
GLEs. We now know from the Volvo liability trial that there was no
such disguise: GLs and GLEs, whether sold in Puerto Rico or
elsewhere, were always DLs with different emblems and a bundle of
added accessories that varied from one market to the other. 
Indeed, the plaintiffs during the litigation appear to have
revised, and added to, their fraud claims as this disguise argument
proved to be baseless.
 The problem for the defaulting defendants, however, is
that the defect in this version of the claim is not one of theory
but of fact. And having defaulted at the liability trial, these
defendants are not automatically in a position to benefit from the
facts that it yielded. Since we conclude below that a further
proceeding must be held as to damages, the question remains whether
plaintiffs can proceed to collect damages on a legally sound but
factually erroneous cause of action. This issue is easier to
address after addressing the damages issue and explaining the need
for a remand--the issues to which we now turn.
 Jury Trial and the Opportunity to Present Damage
Evidence. Having established that the complaint set forth two
independently sufficient claims (although one of them based on a
false factual premise), we consider Trebol's argument that it was
entitled to a jury trial on damages or at least an opportunity to
present evidence relative to damages. The ordinary rule is that a
defaulting defendant is entitled to contest damages and to
participate in a hearing on damages, should one be held. 10A
Wright, Miller & Kane, Federal Practice and Procedure 2688, at
67-68 (3d ed. 1998). But a defaulting defendant is not entitled to
a jury trial on damages, although the court may choose to afford
one. Id. at 69.
 It was open to the defaulting defendants to appear at the
liability trial, concede liability to the jury, and litigate before
the jury the issue of damages whenever the district court allowed
such evidence to be presented. It might also have been allowable
for the defaulters to stipulate, at least with the district court's
approval, that they would default as to liability but preserve a
right to offer evidence to the jury on damages whenever that issue
was ripe. But having chosen simply to default when the case was
called for trial, we think that the defaulters were subject to the
ordinary rule that their right to jury trial was gone--a rule that
reflects the practical need for flexibility where a litigant
declines to appear for trial.
 We are far more troubled by the district court's refusal
to give the defaulting defendants a more substantial opportunity to
present evidence at the damages phase. As the case was originally
structured, the district court's "bifurcation" order said that
there would be three phases: one on liability, a second to
determine the measure of damages if liability were established, and
a third (probably involving a special master) to apply the general
ruling on damages to specific plaintiffs or groups of plaintiffs. 
There was never any formal modification of this procedure so far as
we are aware.
 Nevertheless, during the Volvo liability phase, much of
the plaintiffs' evidence was treated as bearing on both liability
and damages, despite sporadic objection by Volvo to this course; in
all events, Volvo ultimately treated the liability phase evidence
as a sufficient basis for litigating damages and did not offer
further evidence of its own in this second phase. How much the
defaulting defendants knew of this gradual evolution is unclear but
there is no indication that they ever waived their right to contest
damages.
 We are very reluctant to interfere with the discretion of
the trial judge in the scheduling of hearings on damages, or
anything else, for reasons too obvious to need recounting. SeeMendez v. Banco Popular de P.R., 900 F.2d 4, 7 (1st Cir. 1990). 
Yet, in this instance the refusal to allow some additional time
beyond nine days to prepare for the hearing does seem to us to
represent an abuse of discretion. And any doubt is resolved by our
view that the curtailing of evidence was highly prejudicial and may
well have resulted in a gross miscarriage of justice. For this
reason we are constrained to order further proceedings on damages.
 At the outset, we reject plaintiffs' suggestion that the
defaulting defendants were debarred from contesting damages merely
because they had defaulted on liability. The stipulated default
notice made clear that the defaulters were conceding only the truth
of the Third Amended Complaint, and the complaint set forth no
specific amount of damages. Nor is it evident why the defaulters
should be bound by a jury determination of damages against Volvo
made in a proceeding in which their participation was not invited
and in which the jury fixed damages only against Volvo. 
 Plaintiffs argue on appeal that the defaulting defendants
monitored the trial sufficiently to obtain notice as to when the
jury would be considering the issue of damages--the implication
being that if the defaulters wished to contest damages, it was
their duty to advise the court at that time and offer what evidence
they had to the jury. This argument is not entirely fanciful. 
Plaintiffs asserted at the August 29 hearing that counsel for the
defaulting defendants had been present in the courtroom during the
Volvo trial from time to time. Plaintiffs also argue, somewhat
tenuously, that the defaulters' motion to alter or amend the
partial default judgment against them reflected an awareness of the
trial's progress.
 We do not find these arguments persuasive under the
present circumstances. Apart from uncertainty as to the factual
predicate (i.e., what counsel for the defaulters knew about how the
trial unfolded), it does not appear realistic to describe the
damages phase of the Volvo trial as an independent, clearly
demarcated proceeding to establish damages for all defendants, at
which the defaulters' attendance was implicitly expected. On the
contrary, the proceeding seems to have been an addendum to the
Volvo trial and, we note, produced a jury verdict against Volvo
only.
 The district court seemingly thought that the concession
of conspiracy by the defaulters (such an allegation was made in the
complaint and therefore conceded) automatically made the defaulting
defendants liable for any harm done by Volvo. So, arguably, it
did--as to conduct within the scope of the conspiracy. But this
does not mean that the defaulters were bound by a determination
against Volvo as to the amount of damages made by the jury in a
proceeding in which the defaulters played no part. We therefore
conclude that the defaulters were entitled to offer evidence on
damages.
 This brings us to the request for a continuance of the
damages hearing. To expect the defaulting defendants to be able to
produce their damage witnesses on nine days' notice--with no prior
indication that such a hearing would be scheduled--is hard to
understand. Defense counsel's explanation as to his absence from
the country and the request for a one-month continuance was not the
kind of empty excuse that is customarily brushed aside; and the
period of delay requested was not long--representing 30 additional
days in a case already pending for four years. Above all, at the
hearing the defaulting defendants did not rest on generalities but
explained rather specifically (and as it turns out cogently) what
they wanted to try to prove at a hearing.
 The district court said that the defendants should have
been prepared to go on trial in August on the damage issue since
they were prepared for a full trial on the merits in June. With
respect, this seems to us a non sequitur. The defaulting
defendants had ample notice as to the trial date on liability and
chose to default; possibly even with notice they were not ready for
trial. It would hardly be expected that counsel would reserve all
subsequent dates and have witnesses virtually standing by for a
damage hearing with no notice whatsoever as to when it was going to
be scheduled. Under these circumstances, we conclude that the
denial was error, if prejudicial.
 Prejudice there surely was. The damage award against
Volvo and the defaulting defendants is almost certainly an
overstatement. It is based on the premise that every purchaser of
a 240 Volvo in Puerto Rico between 1984 and 1993 was defrauded by
the defendants in an average amount of approximately $7,000 per
car, less an adjustment made by the jury for Puerto Rico excise
taxes. Even if we assume that every single car purchaser was
defrauded, the crux of the problem lies in the calculation of
damages.
 Damages in fraud cases are ordinarily measured either on
an out-of-pocket basis or on an expectation theory. See Dobbs, Law
of Remedies 9.2(1), at 695-96 (1993). In this case, the
plaintiffs ultimately followed the former approach, urging in
effect that they were fraudulently induced to purchase an item by
misrepresentations and non-disclosures, that the cars were worth
less than they had paid, and that plaintiffs were therefore
entitled to the difference between the purchase price and the
lesser "actual value" of what they purchased. The purchase prices
are known figures; the problem lies in computing the actual value
of the purchased vehicles.
 As noted, various plaintiffs testified that they would
have paid less for the Volvos they purchased if they had been given
accurate label information or had known that the emblem and
accessories were added in Puerto Rico. The plaintiffs did not,
however, try to quantify how much less they would have paid, and
the figure presumably would have varied from purchaser to
purchaser. To establish the "actual value" of what was purchased,
the plaintiffs called experts who testified as to the selling price
of unequipped Volvo DLs in the continental United States. 
Plaintiffs then argued to the jury that the actual value of what
the plaintiffs purchased in Puerto Rico was the continental U.S.
price for an unequipped DL increased by whatever the cost might be
of individually purchased equivalent accessories.
 The obvious problem with this calculation is the
assumption that there is one "actual value" of a Volvo, equipped or
otherwise, that is common to both the continental United States and
to Puerto Rico. Put differently, the plaintiffs' theory assumes
that, had full disclosure been made, Volvos would have been for
sale in Puerto Rico for the same prices offered in the continental
United States. What the defaulting defendants offered to show,
when they sought a hearing on damages, was that the two markets
were not the same and that the price of a luxury car in Puerto Rico
was customarily higher than the price in the continental United
States.
 Puerto Rico is a physically separated area where the
direct competition for Volvo sales was likely to come not from
other Volvo dealers (there were no other fully established Volvo
dealerships in Puerto Rico so far as the record reveals), but from
dealers specializing in other expensive cars; and one might
reasonably expect there to be fewer such dealers than in New York
or Florida. Costs are often higher in smaller markets, and even
when they are not, competition is frequently less effective as a
constraint where there are fewer immediate competitors.
 One might argue that merely to show prices of Volvos in
New York or Florida is itself no evidence of the actual value of an
equivalently equipped car in San Juan; but we are inclined to think
otherwise. Plaintiffs might say that the pricing in a nearby
market was at least some evidence of actual value in Puerto Rico
and that it was the defendants' responsibility to counter this
argument with evidence to defeat the inference. But this, of
course, is exactly what the defaulting defendants sought to do and
were prevented from doing because of the district court's refusal
to provide additional time.
 The defendants did not merely offer to provide such
evidence but pointed to a specific way of proving that prices for
luxury cars were higher in Puerto Rico than they were in New York
or Florida and by a very substantial margin. They offered to
produce evidence as to the pricing differential of other widely
distributed luxury cars, mentioning specifically BMW, to show that
the Puerto Rico prices were very much higher than the continental
U.S. prices. One could also imagine securing more broad-ranging
evidence from an economist or marketing expert as to why such
differentials might be expected. Whether such evidence would
entirely undermine plaintiffs' damage showing or merely allow for
appropriate adjustment is something on which we need not speculate.
 It is no pleasure to remand a proceeding, already long
extended, because of the failure to give a thirty day extension. 
But in this case it is relatively easy to restore the status quo
ante. No jury trial is required: the district judge simply needs
to do now what he would have done if he had granted the requested
extension, namely, to consider whatever evidence is tendered and
reach a conclusion as to damages owed by the defaulting defendants
(or at least the Gonzalezes, depending on how the bankruptcy issue
is resolved). This may not be easy, but it is no harder now than
it would have been earlier.
 On remand, damages can certainly be based on the premise
that plaintiffs, or at least some of them, would have paid less for
their cars in Puerto Rico had they been given the additional
information required by the Monroney Act and/or given accurate Law
77 figures instead of the inflated ones to which some of the
plaintiffs were exposed. The more difficult question is whether
the plaintiffs should be allowed to base their damage calculations
on the notion that there was also an implicit misrepresentation or
a culpable non-disclosure as to the affixing of emblems and the
installation of accessories in Puerto Rico. Whether this will
matter is unclear, but we think it useful to address the point.
 Our conclusion is that the emblem and part accessories
fraud claim is not a legitimate basis for computing damages. 
Insofar as it involves merely a failure to disclose that emblems
and certain accessories were installed in Puerto Rico, this
conclusion is easy. We have already determined that failure to
disclose this information does not constitute a valid claim under
the present circumstances, see Volvo, slip op., pp. 13-19, and the
defaulting defendants fully preserved this legal objection despite
their default.
 The greater difficulty is posed by the charge, explicit
in the complaint, that there is such a thing as a real GL or GLE--
differing in some unidentified way from DLs apart from emblem and
accessories and their place of installation--and that the DLs sold
in Puerto Rico were essentially disguised versions. There is
nothing obviously wrong with this theory of liability; the
difficulty is that it rests on a premise that we now know to be
false or at least beyond plaintiffs' ability to prove. Should
plaintiffs nevertheless be allowed to proceed to collect damages on
this false premise, given that the defendants conceded the facts
asserted in the Third Amended Complaint by defaulting at the
liability phase of the trial?
 We could find no precedent on this peculiar problem, and
there may be no single answer independent of circumstances. In the
present circumstances, we conclude that the emblem and accessories
fraud theory should not be utilized in calculating damages. To the
extent that it is independently viable apart from a mere failure to
disclose where items were installed, the plaintiffs failed to prove
it at trial against Volvo. There is no indication that more could
have been proved against the defaulting defendants on this issue,
and experts should not be asked to develop factual assertions about
damages on a factual premise that was already shown to be untrue.
 At the same time, we think that in fairness the
plaintiffs should be allowed to offer new case-in-chief evidence on
damages on their Monroney Act and Law 77 label theory and should
not be limited to the expert testimony and other evidence offered
against Volvo and to cross-examination or refuting defendants'
witnesses. And to the extent that the district court sitting as
factfinder wishes to rely on evidence submitted in the Volvo trial,
it may do so as long as the defendants are given an opportunity to
recall witnesses or offer evidence on a damage-related issue on
which the Volvo-trial evidence reasonably bears. This, after all,
is a bench trial.
 Trebol's Bankruptcy. The Trebol defendants (not the
Gonzalezes) filed for bankruptcy on September 30, 1996, and argued
to the district court that the judgment dated October 8, 1996, was
subject to the automatic stay of 11 U.S.C. 362(a)(1). The
district court held that, since the entry of judgment after the
Trebol defendants' bankruptcy filing was purely "ministerial," the
bankruptcy stay did not apply. Trebol appeals this ruling.
 We recently set forth the characteristics that place
action by a non-bankruptcy court within the automatic stay's narrow
exception for "ministerial" actions. Generally, such actions are
"essentially clerical in nature," such as the court clerk's
docketing of a previously issued judicial disposition or similar
act that does not require the exercise of an officer's discretion. 
See In re Soares, 107 F.3d 969, 974 (1st Cir. 1997). We expressly
noted that ministerial acts "can usefully be visualized as the
antithesis of judicial acts." Id. 
 Here, the district court had not publicly announced its
judgment or submitted its decision to the court clerk by the time
the bankruptcy petition was filed on September 30, 1996. The
district judge may well have made up his own mind as to how he
would rule, but to be workable, an exception to the automatic bar
for ministerial acts has to be based on objective considerations. 
Otherwise, the reviewing court would be inquiring into the
unexpressed state of mind of the trial judge, a course that would
be unwise as well as impractical. We are not bound by the district
court's own determination that entry of judgment after September 30
was ministerial. See Soares, 107 F.3d at 975. 
 Plaintiffs argue that objective evidence is provided by
the district judge's statement at the August 29 hearing that the
jury verdict against Volvo and the doctrine of consistency of
judgments "affects" the judgment against the defaulting defendants. 
The statement mentioned came at the beginning of the hearing,
before the defaulting defendants had been invited to present
evidence or argue the issue of damages. We cannot treat this
preliminary statement as a definitive decision on damages against
Trebol, making everything that follows merely a ministerial act.
 Consequently, the judgment as to Trebol was entered in
violation of the stay. Although the automatic stay applies to
appeals courts as well as district courts, we have by implication
power to vacate a judgment entered in violation of the automatic
stay. We therefore vacate the October 8 judgment against Trebol
and direct that further proceedings against Trebol be halted until
the stay is lifted.
 Alternate Theory of Damages. The plaintiffs have filed
a conditional appeal (No. 97-1145) addressing two issues, the first
of which is directly relevant to the remand on damages. At trial,
the district court instructed the jury that damages were to be
calculated as the difference between the price paid by plaintiffs
and the actual value of the cars received. The plaintiffs had
requested a second theory that would have awarded the total amounts
of money paid by plaintiffs as a result of the fraudulent
transactions. The district court provisionally allowed this "full
price" theory of damages in its order on bifurcation, but later
rejected it during the trial against Volvo.
 We think the district court was correct in denying
recovery on the plaintiffs' alternate full price theory. The
parties occasionally refer to the full price theory as a
"rescission"-type remedy, seeking to place the plaintiffs in the
same position that they would have been in absent the fraudulent
transaction. Such a theory may be an appropriate alternative where
a fraudulent sale can be effectively undone. Cf. Randall v.
Loftsgaarden, 478 U.S. 647, 661 (1986); Winant v. Bostic, 5 F.3d
767, 776 (4th Cir. 1993). 
 The theory is inappropriate here. Plaintiffs acquired
their Volvo cars and have not offered to return them. Some still
own their vehicles, and some have sold them for cash. Allowing
plaintiffs to recover the full purchase price without requiring
return of the vehicles would be an unjustifiable windfall. And
putting aside the benefit plaintiffs obtained by using the cars
over varying portions of the last decade, it would hardly be
possible to return them now unblemished.
 The cases cited by plaintiffs are not to the contrary. 
In Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1569 (1st
Cir. 1994), the defrauded insurer was allowed to nullify all
insurance coverage because of fraud--disallowing even valid claims
--but there is no indication that the insurer did not also return
the insurance premiums it had received. Similarly, in FTC v.
Figgie International, Inc., 994 F.2d 595, 606 (9th Cir. 1993),
cert. denied, 510 U.S. 1110 (1994), the order for a full refund
"create[d] no windfall" because plaintiffs who decided to keep the
property they acquired due to the seller's fraud would forego the
refund. We therefore need not decide the additional question
mentioned in passing in DeMauro v. DeMauro, 115 F.3d 94, 98 (1st
Cir. 1997): whether an equitable remedy like rescission is at all
cognizable under RICO.
 Prejudgment Interest. The plaintiffs' second issue on
cross-appeal concerns prejudgment interest. The district court did
not submit the issue of prejudgment interest to the jury, but
initially granted prejudgment interest on its own motion. It later
reversed this decision, and plaintiffs now urge that, in the event
that we remand this case for a new trial, the issue of prejudgment
interest should be submitted to the jury. Notably, plaintiffs do
not argue that the district court abused its discretion in refusing
to award prejudgment interest.
 There will be no new trial against Volvo, for the reasons
stated in our Volvo opinion. As to Trebol and the Gonzalez
defendants, the case is being remanded only to determine the amount
of damages. As we note above, because of the default the district
court is not required to hold a jury trial on damages. We view it
as unlikely that the district court will decide to impanel a second
jury solely for the issue of damages.
 We therefore leave for another day questions regarding
the general availability of prejudgment interest in RICO cases,
whether it should be left to a jury acting as factfinder, and
whether prejudgment interest would be appropriate in this case. On
remand, the district court is free to reconsider whether to grant
prejudgment interest, a decision we will review if and when
necessary, but there is no present reason for us to anticipate that
the district judge will alter his position.
 The district court's judgment entered on October 10,
1996, is vacated as to Trebol and the Gonzales defendants, and the
matter is remanded for proceedings consistent with this opinion.
 It is so ordered.