**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GLENN TIBBLE; WILLIAM BAUER;
WILLIAM IZRAL; HENRY
RUNOWIECKI; FREDERICK
SUHADOLC; HUGH TINMAN, JR., as
representatives of a class of similarly
situated persons, and on behalf of the
Plan,

*Plaintiffs-Appellants*,

v.

EDISON INTERNATIONAL; THE
EDISON INTERNATIONAL BENEFITS
COMMITTEE, FKA The Southern
California Edison Benefits
Committee; EDISON INTERNATIONAL
TRUST INVESTMENT COMMITTEE;
SECRETARY OF THE EDISON
INTERNATIONAL BENEFITS
COMMITTEE; SOUTHERN CALIFORNIA
EDISON'S VICE PRESIDENT OF
HUMAN RESOURCES; MANAGER OF
SOUTHERN CALIFORNIA EDISON'S
HR SERVICE CENTER,

*Defendants-Appellees.*

No. 10-56406

D.C. No.
2:07-cv-05359-
SVW-AGR

GLENN TIBBLE; WILLIAM BAUER; WILLIAM IZRAL; HENRY RUNOWIECKI; FREDERICK SUHADOLC; HUGH TINMAN, JR., as representatives of a class of similarly situated persons, and on behalf of the Plan,

*Plaintiffs-Appellees*,

v.

EDISON INTERNATIONAL; SOUTHERN CALIFORNIA EDISON BENEFITS COMMITTEE, incorrectly named The Edison International Benefits Committee; EDISON INTERNATIONAL TRUST INVESTMENT COMMITTEE; SECRETARY OF THE SOUTHERN CALIFORNIA EDISON COMPANY BENEFITS COMMITTEE, incorrectly named Secretary of the Edison International Benefits Committee; SOUTHERN CALIFORNIA EDISON'S VICE PRESIDENT OF HUMAN RESOURCES; MANAGER OF SOUTHERN CALIFORNIA EDISON'S HR SERVICE CENTER,

*Defendants-Appellants.*

No. 10-56415

D.C. No.
2:07-cv-05359-
SVW-AGR

OPINION

On Remand From The United States Supreme Court

Argued and Submitted
December 7, 2015—San Francisco, California

Filed April 13, 2016

Before: Alfred T. Goodwin and Diarmuid F. O'Scannlain,
Circuit Judges, and Jack Zouhary, District Judge.[*]

Opinion by Judge O'Scannlain

## SUMMARY[**]

### Employee Retirement Income Security Act

On remand from the United States Supreme Court, the panel affirmed the district court's judgment, after a bench trial, in favor of an employer and its benefits plan administrator on claims of breach of fiduciary duty in the selection and retention of certain mutual funds for a benefit plan governed by ERISA.

The court of appeals had previously affirmed the district court's holding that the plan beneficiaries' claims regarding the selection of mutual funds in 1999 were time-barred. The

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Supreme Court vacated the court of appeals' decision, observing that federal law imposes on fiduciaries an ongoing duty to monitor investments even absent a change in circumstances.

On remand, the panel held that the beneficiaries forfeited such ongoing-duty-to-monitor argument by failing to raise it either before the district court or in their initial appeal.

## COUNSEL

Michael A. Wolff, Schlichter Bogard & Denton LLP, St. Louis, Missouri, argued the cause and filed the briefs for the plaintiffs-appellants. With him on the briefs were Jerome J. Schlichter, Nelson G. Wolff, and Sean E. Soyars, Schlichter Bogard & Denton LLP, St. Louis, Missouri.

Johnathan D. Hacker argued the cause and filed the brief for for the defendants-appellees. With him on the brief were Meaghan VerGow, O'Melveny & Myers LLP, Washington, D.C.; Ward A. Penfold and Gabriel Markoff, O'Melveny & Myers LLP, San Francisco, California; and Sergey Trakhtenberg, Southern California Edison Company, Rosemead, California.

**OPINION**

O'SCANNLAIN, Circuit Judge:

Glenn Tibble and other beneficiaries sued their employer Edison International and its benefit plan administrator under the Employee Retirement Income Security Act of 1974, asserting a violation of the duty of prudence in the selection and retention of certain mutual funds. The district court held that the beneficiaries' claims were time-barred, and, on appeal, we agreed. The Supreme Court subsequently vacated our decision, observing that federal law imposes on fiduciaries an ongoing duty to monitor investments even absent a change in circumstances, and remanded to us. Consistent with the Supreme Court's instructions, we must decide whether the beneficiaries forfeited such ongoing-duty-to-monitor argument by failing to raise it before the district court or our Court.

I

Edison International is a holding company which includes Southern California Edison Company and other energy interests (collectively "Edison"). As an employer-organization, Edison offers a 401(k) Savings Plan ("Plan") to its workforce. That Plan is a defined-contribution fund, meaning that the value of any employee's retirement benefits is limited to his or her own individual investment account. Participants invest a part of their wages combined with a company contribution in the investment options they choose from the Plan menu. Ultimately, the value of those individual investments is determined by the market performance of employee and employer contributions, less expenses such as management or administrative fees. As of 2007, the plan held

roughly $3.8 billion in assets for the benefit of approximately 20,000 participants.

The Plan's investment menu originally contained six options. In response to a study and negotiations with unions representing some of the workforce, Edison expanded the Plan dramatically in 1999. Particularly relevant here, Edison added three retail-class mutual funds. These funds were generally available to the public and had higher administrative fees than other institutional-class alternatives available only to institutional investors. Edison added three more retail-class mutual funds to the Plan after 2002.

## A

On August 16, 2007, Glenn Tibble and other current and former beneficiaries sued Edison pursuant to § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), which allows "a participant, beneficiary or fiduciary" to bring an action for breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). Among other claims, beneficiaries asserted that Edison violated its fiduciary duties under ERISA by selecting retail-class mutual funds when cheaper, institutional-class funds were available. Edison moved for summary judgment, asserting that the beneficiaries' claims regarding the three mutual funds added to the Plan in 1999 were barred by Section 413 of ERISA, which states that no action for fiduciary breach can be commenced six years after "the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113. The district court agreed, granting partial summary judgment and observing that these mutual funds were added to the plan more than six years before beneficiaries' lawsuit. *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074 (C.D. Cal. 2009). In so holding, the district

court reasoned that "[t]here is no 'continuing violation' theory to claims subject to ERISA's statute of limitations." *Id.* at 1086 (quoting *Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991)).

Following partial summary judgment, beneficiaries proceeded to trial on whether Edison violated its fiduciary duty by selecting the retail-class mutual funds added to the Plan in 2002. During trial, however, the district court also allowed beneficiaries to allege a violation of the duty of prudence relating to the 1999-added mutual funds on the theory that "significant events within the limitations period" should have triggered a review of these funds. To support this theory, beneficiaries offered testimony from their expert, Dr. Steven Pomerantz. Pomerantz pointed out that two of the funds added in 1999 had undergone a name change and another had changed from a small-cap growth fund to a small-mid-cap growth fund. Pomerantz asserted that these changes were "significant enough" that Edison should have conducted a full due diligence review.

During trial, beneficiaries also asserted that Edison violated its duty of prudence by keeping a certain Money Market Fund in the Plan that allegedly charged excessive management fees. Although Edison initially added the Money Market Fund more than six years before litigation commenced, the beneficiaries claimed that Edison violated its fiduciary duty within the relevant time period by failing to monitor the Fund's fees and switch to one with lower fees. The district court allowed beneficiaries to proceed on this claim, notwithstanding its ruling related to the 1999-added mutual funds.

Ultimately, the district court ruled in favor of Edison on almost all of beneficiaries' claims. With respect to the retail-class mutual funds added in 1999, the district court concluded that the changes identified by beneficiaries within the limitations period were insufficient to justify a full due diligence review. The district court also ruled in favor of Edison with respect to the Money Market Fund, concluding that Edison did in fact monitor this Fund within the relevant time period and that its decision to maintain the Money Market Fund was not imprudent.

B

Following judgment in the district court, beneficiaries appealed to this Court of Appeals. They argued that the district court erred in concluding that ERISA's six-year limitation barred their claim that Edison breached its fiduciary duty by adding retail-class mutual funds to the Plan in 1999. They did not contest the district court's conclusion that no "significant events" occurred within the relevant period that would have triggered a due diligence review. Rather, they contended that under Section 413 of ERISA, the six-year limitation incorporates the continuing violation doctrine. In response, Edison acknowledged that it had an ongoing duty to ensure that each of the Plan's investment options remained prudent. But Edison pointed out that the beneficiaries were not alleging acts that constituted a violation within the six-year period, but instead arguing their lawsuit should be deemed timely because of the "continuing effects" of decisions made previously, in 1999.

We sided with Edison, holding that "the act of designating an investment for inclusion starts the six-year period . . . for claims asserting imprudence in the design of the plan menu."

*Tibble v. Edison Int'l*, 729 F.3d 1110, 1119 (9th Cir. 2013). We declined beneficiaries' invitation to "equitably engraft onto, or discern from the text of section 413 a 'continuing violation theory.'" *Id.* We reasoned that "[c]haracterizing the mere continued offering of a plan option, without more, as a subsequent breach" would render ERISA's time limitation meaningless and could make fiduciaries liable for decades-old decisions. *Id.* at 1120. We also concluded that the district court was correct in allowing beneficiaries to assert evidence of "changed circumstances engendering a new breach," but noted that it found that no such circumstances were present. *Id.*

## C

Following our decision, beneficiaries successfully petitioned for certiorari to the Supreme Court. There, they asserted that their case was "unlike those in which the plaintiff bases a claim on an unlawful act that occurred prior to the [limitations] period but that has continuing effects during that period." Instead, they argued that the alleged breach underlying their claims was Edison's "failures prudently to review and remove retail-class shares within the limitations period" (incidentally, an argument which was not raised before us). Edison responded by arguing that beneficiaries had asserted no such claim before the trial court even though they were perfectly free to do so. Accordingly, Edison argued the petition should be dismissed as improvidently granted.

The Supreme Court disagreed with our simple conclusion that ERISA's six-year time limitation applied and vacated our decision. *See Tibble v. Edison Int'l*, 135 S.Ct. 1823 (2015). According to the Court, we erred by "applying a statutory bar

to a claim of a 'breach or violation' of a fiduciary duty without considering the nature of the fiduciary duty." *Id.* at 1827. The Court emphasized that "under trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Id.* at 1828–29. Correspondingly, the Court reasoned that a claim for breaching such duty is timely under ERISA "so long as the alleged breach of the continuing duty [to monitor] occurred within six years of suit." *Id.* at 1829. The Court acknowledged that beneficiaries may have forfeited their claim that Edison "committed new breaches of the duty of prudence by failing to monitor their investments." *Id.* at 1829. The Court instructed us to consider this issue on remand. *Id.*

## II

Section 413 of ERISA provides that no action for fiduciary breach may be commenced "after the earlier of":

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. There is no dispute that the addition of retail-class mutual funds to the Plan in 1999 occurred more than six years before beneficiaries brought suit. The question is whether beneficiaries waived any argument that Edison breached its ongoing duty to monitor these funds within the statutory period.

## A

We recognize "a 'general rule' against entertaining arguments on appeal that were not presented or developed before the district court." *Visendi v. Bank of Am.*, 733 F.3d 863, 869 (9th Cir. 2013) (quoting *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010)). "Although 'no bright line rule exists to determine whether a matter has been properly raised below,' an issue will generally be deemed waived on appeal if the argument was not 'raised sufficiently for the trial court to rule on it.'" *In re Mercury*, 618 F.3d at 992 (quoting *Whittaker Corp. v. Execuair Corp.*, 953 F.3d 510, 515 (9th Cir. 1992)).

## 1

Beneficiaries admit that during trial they did not argue that Edison violated its duty of prudence by failing to monitor retail-class mutual funds added to the Plan in 1999. Instead, they pursued a theory that "significant changes" in these funds ought to have triggered a due diligence review. They now argue their failure to present a continuing-duty-to-monitor argument ought to be excused since the district court's summary judgment order precluded "any claim" of this type. We are not persuaded.

The district court began its discussion of Section 413(1)'s six-year time limitation by observing that "[t]here is no 'continuing violation' theory to claims subject to ERISA's statute of limitations." *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074, 1086 (C.D. Cal. 2009) (quoting *Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991)). In *Phillips*, we held that Section 413(2) of ERISA, the companion time limitation to the six-year limit at issue in this case, bars actions where a plaintiff has actual knowledge of a breach but does not sue within the required period. *Phillips*, 944 F.2d at 520. In so holding, we concluded that a plaintiff may not subvert the actual-knowledge time limitation by pointing to some later breach, where that breach is "of the same kind and nature" as the one known to the plaintiff. *Id.* at 521. Applying this insight to ERISA's six-year limitation in Section 413(1), the district court declared that a party may not assert that "any failure to rectify the breach constituted another discrete breach." *Tibble*, 639 F. Supp. 2d at 1086. Said another way, the court read *Phillips* to stand for the proposition that a party may not disguise a time-barred claim by styling the injury as a "failure to rectify" a breach that occurred outside ERISA's statutory time-limitation.

Beneficiaries argue that the court forbade them from raising a duty-to-monitor argument by barring claims that were "of the same character" as those involving Edison's inclusion of the retail mutual funds in 1999. But the district court's order said nothing of the kind. Instead, the court held only that a disguised time-barred claim could not be transmuted into a timely claim by styling a past breach as a "continuing violation." The court's order certainly precluded beneficiaries from arguing that Edison breached its duty by selecting retail-class mutual funds in 1999. But nothing in

the court's order foreclosed beneficiaries from arguing that Edison breached its duty *within* the statutory period by failing to monitor these funds. The court's summation of its holding makes this point clear. The district court noted that: "the initial decision to add retail mutual funds . . . as an option in the Plan was made in 1999 and 2000," along with other decisions outside the relevant six-year period. *Id.* at 1120. "Thus," the court concluded, "the prudence claims arising out of these decisions are barred by the statute of limitations." *Id.* When the court said prudence claims arising out of "these decisions" are barred, it was obviously referring to "the *initial decision* to add retail mutual funds" along with other decisions occurring outside the statutory period. Beneficiaries were barred from arguing about the initial decision to include the retail-class mutual funds, not from making a separate duty-to-monitor argument about those funds.

2

The district court's interaction with beneficiaries' expert Dr. Steven Pomerantz also confirms that their decision to forego a duty-to-monitor argument was their own, not one the court forced upon them. The court reiterated several times during Pomerantz's testimony that it "d[idn't] understand the connection between the name change [of two of the 1999 mutual funds] and the whole issue of why or why not institutional shares should have been bought," nor did it see why it was "relevant as to whether . . . it was a name change or the fund remained the same." In fact, the court went so far as to ask Pomerantz specifically whether Edison should have removed the three funds even without any significant changes: "Let's say that these plans didn't have a name change . . . [w]ould you contend that . . . during the relevant

time period due diligence would have required the plan to nevertheless buy an institutional share class, all things being equal, assuming the institutional share class had a lower fee?" Pomerantz declined the invitation. We think this exchange clearly demonstrates that the court did not forbid beneficiaries from arguing that Edison failed to monitor the funds, nor did it force a "significant changes" theory upon them. On the contrary, the district judge was showing concern about why beneficiaries elected to pursue their chosen theory. Beneficiaries' trial strategy was their own choice, not one mandated by the court.

3

Finally, beneficiaries' own claims presented at trial establish beyond any doubt that beneficiaries were not forbidden from arguing that Edison possessed an ongoing duty to monitor. Indeed, it is undisputed that the court allowed beneficiaries to make just this kind of failure-to-monitor argument in relation to the Money Market Fund. Like the retail-class mutual funds, the Money Market Fund was added to the Plan more than six years before beneficiaries commenced their suit. Moreover, like their claim related to the retail-class mutual funds, beneficiaries claimed that the selection of the Money Market Fund was imprudent because it "requir[ed] Plan participants to pay excessive . . . fees" from the first date it was added. However, unlike their claim relating to the retail-class mutual funds, their challenge regarding the Money Market Fund specifically alleged that Edison failed to monitor the fees of such Fund during the relevant time period. The district court did not forbid such a claim as violating ERISA's six-year limitation. On the contrary, the court considered this argument on the merits and rejected it. Beneficiaries' failure

to make a duty-to-monitor argument in relation to the retail-class mutual funds can hardly be attributed to the court, where the court allowed that same argument to proceed in relation to another supposedly imprudent investment that originated outside the statutory period.

4

The foregoing demonstrates that beneficiaries did not present their duty-to-monitor argument "sufficiently for the trial court to rule on it"—indeed, they failed to present this argument in relation to the contested mutual funds at all, despite the clear opportunity to do so. *See In re Mercury Interactive*, 618 F.3d at 992.

Moreover, no exception saves their forfeited argument. There has been no "change in the law" that could justify beneficiaries' failure to raise a duty-to-monitor argument about the mutual funds, since no law actually forbade them from bringing it. Nor is the issue here "purely one of law" or one in which the pertinent record has been fully developed. *Id.* (quoting *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)). Indeed, the whole point of beneficiaries' briefing on remand is that this case must be sent back to the district court because the factual record as it currently stands is inadequate to decide the now-raised duty-to-monitor claim.

Finally, the record demonstrates that this is not "the exceptional case" in which the Court should excuse a failure to raise an argument "to prevent a miscarriage of justice or to preserve the integrity of the judicial process." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012) (citation and internal quotation marks omitted). Because the beneficiaries were not precluded from making their duty-to-

monitor argument in the first place, there is no injustice in forbidding them from doing so now. *See Armstrong v. Brown*, 768 F.3d 975, 982 (9th Cir. 2014) (refusing to consider an argument where a party had "ample opportunity" to raise it below). The argument is forfeit.

B

Even setting aside beneficiaries' failure to raise their continuing-duty-to-monitor argument to the trial court, there is little doubt they forfeited the argument by failing to present it to us in their initial appeal. Thus, the claim is doubly forfeit.

"We review only issues which are argued specifically and distinctly in a party's opening brief." *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012). A party's failure to comply with this standard is "sufficient ground to justify dismissal of an appeal," including one taken on remand from the Supreme Court. *Christian Legal Soc'y v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010) (quoting *In re O'Brien*, 312 F.3d 1135, 1136 (9th Cir. 2002)).

In their opening brief submitted to us in their initial appeal, beneficiaries contended that the district court erred in ruling that their claims related to retail-class mutual funds were time-barred under 29 U.S.C. § 1113. They sensibly chose not to repeat the "changed circumstances" argument that they offered to the district court, since the district court's factual determinations on that theory would have been subject to a deferential standard of review. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1067 (9th Cir. 2008) (en banc). Rather, they argued that the district court erred because "ERISA's six-year limitation incorporates the continuing

violation doctrine." According to beneficiaries, their claim was timely because Edison's failure to "switch[] from retail to institutional class shares" continued the breach that occurred when the funds were added to the Plan, not because Edison failed to adequately monitor the mutual funds thereafter.

Beneficiaries now attempt to argue that they raised the continuing-duty-to-monitor argument in their brief, insofar as they asserted that "[d]efendants had a continuing duty to ensure that each of the Plans' [sic] investment options was and remained prudent and had reasonable expenses." However, as Edison pointed out during the original appeal, that broad contention was not actually in dispute. What *was* in dispute was beneficiaries' assertion that Edison could be held liable for "their breach of duty *in keeping these funds in the Plan* in the six years before commencement of this action." Responding to that argument, we concluded that "the act of designating an investment for inclusion starts the six-year period under section 413(1)(A) *for claims asserting imprudence in the design of the plan menu.*" *Tibble*, 729 F.3d at 1119 (emphasis added). We correspondingly concluded that "[c]haracterizing the mere continued offering of a plan option, without more," would render ERISA's time limitation meaningless. *Id.* at 1120 (emphasis added).

In short, beneficiaries never asserted Edison violated its duty by failing to monitor the retail-class mutual funds; they asserted only that we ought to read ERISA as excusing an otherwise time-barred lawsuit where the effects of a past breach continue into the future. Because beneficiaries never presented to us an argument about an ongoing duty-to-monitor, it is "elementary" that beneficiaries should not be

allowed a second bite at the apple on remand. *See Nw. Ind. Tel. Co. v. FCC*, 872 F.2d 465, 470 (D.C. Cir. 1989).

### III

As the record amply demonstrates, beneficiaries did not raise an ongoing-duty-to-monitor argument at any point in this litigation before their petition to the Supreme Court. Fittingly, the district court's judgment is

**AFFIRMED.**