**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GLENN TIBBLE; WILLIAM BAUER;
WILLIAM IZRAL; HENRY
RUNOWIECKI; FREDERICK
SUHADOLC; HUGH TINMAN, JR., as
representatives of a class of
similarly situated persons, and on
behalf of the Plan,
            *Plaintiffs-Appellants*,

v.

EDISON INTERNATIONAL; THE
EDISON INTERNATIONAL BENEFITS
COMMITTEE, FKA The Southern
California Edison Benefits
Committee; EDISON INTERNATIONAL
TRUST INVESTMENT COMMITTEE;
SECRETARY OF THE EDISON
INTERNATIONAL BENEFITS
COMMITTEE; SOUTHERN
CALIFORNIA EDISON'S VICE
PRESIDENT OF HUMAN RESOURCES;
MANAGER OF SOUTHERN
CALIFORNIA EDISON'S HR SERVICE
CENTER,
            *Defendants-Appellees.*

No. 10-56406

D.C. No.
2:07-cv-05359-
SVW-AGR

| | |
|---|---|
| GLENN TIBBLE; WILLIAM BAUER; WILLIAM IZRAL; HENRY RUNOWIECKI; FREDERICK SUHADOLC; HUGH TINMAN, JR., as representatives of a class of similarly situated persons, and on behalf of the Plan, | No. 10-56415 |
| *Plaintiffs-Appellees*, | D.C. No. 2:07-cv-05359-SVW-AGR |
| v. | OPINION |
| EDISON INTERNATIONAL; THE SOUTHERN CALIFORNIA EDISON BENEFITS COMMITTEE, incorrectly named The Edison International Benefits Committee; EDISON INTERNATIONAL TRUST INVESTMENT COMMITTEE; SECRETARY OF THE SOUTHERN CALIFORNIA EDISON COMPANY BENEFITS COMMITTEE, incorrectly named Secretary of the Edison International Benefits Committee; SOUTHERN CALIFORNIA EDISON'S VICE PRESIDENT OF HUMAN RESOURCES; MANAGER OF SOUTHERN CALIFORNIA EDISON'S HR SERVICE CENTER, | |
| *Defendants-Appellants.* | |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted En Banc September 8, 2016
San Francisco, California

Filed December 16, 2016

Before:  SIDNEY R. THOMAS, Chief Judge, and STEPHEN REINHARDT, BARRY G. SILVERMAN, M. MARGARET MCKEOWN, RICHARD A. PAEZ, RICHARD R. CLIFTON, CARLOS T. BEA, MILAN D. SMITH, JR., JACQUELINE H. NGUYEN, PAUL J. WATFORD and MICHELLE T. FRIEDLAND, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Employee Retirement Income Security Act

On remand from the Supreme Court, the en banc court vacated the district court's judgment in favor of an employer and its benefits plan administrator on claims of breach of fiduciary duty in the selection and retention of certain mutual funds for a benefit plan governed by ERISA.

The court of appeals had previously affirmed the district court's holding that the plan beneficiaries' claims regarding the selection of mutual funds in 1999 were time-barred under the six-year limit of 29 U.S.C. § 1113(1).  The Supreme

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Court vacated the court of appeals' decision, observing that federal law imposes on fiduciaries an ongoing duty to monitor investments even absent a change in circumstances.

Rejecting defendants' contention that the beneficiaries waived the ongoing-duty-to-monitor argument, the en banc court held that the beneficiaries did not forfeit the argument either in the district court or on appeal. Rather, defendants themselves failed to raise the waiver argument in their initial appeal, and thus forfeited this argument.

The en banc court distinguished *Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509 (9th Cir. 1991), which held that when a fiduciary violated a continuing duty over time, the three-year limitations period set forth in 29 U.S.C. § 1113(2) began when the plaintiff had actual knowledge of a breach in a series of discrete but related breaches. The panel held that *Phillips* did not apply to the continuing duty claims at issue under § 1113(1). Thus, only a "breach or violation," such as a fiduciary's failure to conduct its regular review of plan investments, need occur within the six-year statutory period of § 1113(1); the initial investment need not be made within the statutory period.

Looking to the law of trusts to determine the scope of defendants' fiduciary duty to monitor investments, the en banc court held that the duty of prudence required defendants to reevaluate investments periodically and to take into account their power to obtain favorable investment products, particularly when those products were substantially identical—other than their lower cost—to products they had already selected.

The en banc court vacated the district court's decisions concerning the funds added to the ERISA plan before 2001 and remanded on an open record for trial on the claim that,

regardless of whether there was a significant change in circumstances, defendants should have switched from retail-class fund shares to institutional-class fund shares to fulfill their continuing duty to monitor the appropriateness of the trust investments. The en banc court also directed the district court to reevaluate its award of costs and attorneys' fees in light of the Supreme Court's decision and the en banc court's decision.

## COUNSEL

Michael A. Wolff (argued), Jason P. Kelly, Sean E. Soyars, Nelson G. Wolff, and Jerome J. Schlichter, Schlichter Bogard & Denton, Saint Louis, Missouri, for Plaintiffs-Appellants/Cross-Appellees.

Jonathan D. Hacker (argued), Meaghan VerGow, Robert N. Eccles, and Walter Dellinger, O'Melveny & Myers LLP, Washington, D.C.; Gabriel Markoff and Ward A. Penfold, O'Melveny & Myers LLP, San Francisco, California; Sergey Trakhtenberg, Southern California Edison Company, Rosemead, California; for Defendants-Appellees/Cross-Appellants.

Jay E. Sushelsky, AARP Foundation Litigation, and Melvin Radowitz, AARP, Washington, D.C., for Amicus Curiae AARP.

Stacey E. Elias, Trial Attorney; Elizabeth Hopkins, Counsel for Appellate and Special Litigation, Washington, D.C.; Timothy D. Hauser, Associate Solicitor for Plan Benefits Security Division, and M. Patricia Smith, Solicitor of Labor, United States Department of Labor, Washington, D.C.; for Amicus Curiae Secretary of Labor.

S. Michael Chittenden and Thomas L. Cubbage III, Covington & Burling LLP, Washington, D.C., for Amicus Curiae Investment Company Institute.

Abbey M. Glenn, Alison B. Willard, and Nicole A. Diller, Morgan Lewis Bockius LLP, San Francisco, California; for Amicus Curiae California Employment Law Council.

## OPINION

M. SMITH, Circuit Judge:

### FACTS AND PRIOR PROCEEDINGS

Edison sponsors a defined-contribution 401(k) Savings Plan (Plan), wherein "participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1826 (2015) (*Tibble IV*). "Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Id.*

In 2007, plaintiffs-appellants (beneficiaries) brought this action against Edison and the other defendants (collectively, Edison). The district court denied the beneficiaries' motion for partial summary judgment, and partially granted Edison's summary judgment motion. *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074, 1080 (C.D. Cal. 2009) (*Tibble I*). This appeal concerns a claim that survived summary judgment; namely, that Edison breached its fiduciary duties by offering "higher priced retail-class mutual funds as Plan investments when materially identical lower priced institutional-class

mutual funds were available (the lower price reflects lower administrative costs)." *Tibble IV*, 135 S. Ct. at 1826.

The Plan is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. The relevant ERISA statute of limitations is six years, 29 U.S.C. § 1113(1), and at least three of the disputed funds were added more than six years before the complaint was filed. *Tibble IV*, 135 S. Ct. at 1826. The district court allowed the beneficiaries to present evidence that their claims concerning those funds were timely because Edison, within the six-year limitations period, "fail[ed] to convert the retail shares to institutional shares upon the occurrence of certain 'triggering events'" that should have prompted a full due-diligence review. *Tibble v. Edison Int'l*, No. CV 07-5359 SVW (AGRx), 2010 U.S. Dist. LEXIS 69119, at *99 (C.D. Cal. July 8, 2010) (*Tibble II*).

After a bench trial, the district court ruled for the beneficiaries on the retail-class funds selected within the six-year period, because Edison did "not offer[] any credible explanation for why the retail share classes were selected instead of the institutional share classes," and "a prudent fiduciary acting in a like capacity would have invested in the institutional share classes." *Id.* at *98. Indeed, the court held that there was "***no evidence*** that [Edison] even considered or evaluated the different share classes" when the funds were added. *Id.* at *81 (emphasis in original).

As to the funds initially selected before the statute of limitations, the district court held that the "triggering events" proffered by the beneficiaries for two of the funds—a name change because of a partial change in ownership of a sub-advisor, and a name change related to a years-old ownership change—were insufficient to trigger a full diligence review, and that a change in strategy in a third fund—from small-cap

to mid-cap—triggered a review to which Edison responded adequately by adding another small-cap option. *Id.* at *102–07.

On appeal to our court, the beneficiaries argued that the district court should have allowed them to prove their claims concerning funds selected before the relevant six-year period. *Tibble v. Edison Int'l*, 729 F.3d 1110, 1119 (9th Cir. 2013) (*Tibble III*), *vacated*, 135 S. Ct. 1823, 1829 (2015). In response, Edison acknowledged that it had a duty to monitor the funds for changed circumstances that would make the investment no longer prudent, but argued that the beneficiaries did not show sufficiently changed circumstances. Our vacated decision accepted Edison's contention, and noted that "the district court was entirely correct to have entertained" the possibility of changed circumstances, and correct to have found the circumstances insufficient to trigger a response by Edison. *Id.* at 1120. We thus concluded that any theory of a duty absent changed circumstances amounted to a continuing violation theory that we declined to read into the ERISA statute of limitations. *Id.* at 1119–20.

Plaintiffs successfully petitioned for certiorari, and the Supreme Court reversed our decision concerning the statute of limitations, holding that regardless of when an investment was initially selected, "a fiduciary's allegedly imprudent retention of an investment" is an event that triggers a new statute of limitations period. *Tibble IV*, 135 S. Ct. at 1826, 1828–29. The Court specifically rejected "the conclusion that *only* a significant change in circumstances could engender a new breach of a fiduciary duty." *Id.* at 1827. We were cautioned against "applying a statutory bar to a claim of a 'breach or violation' of a fiduciary duty without considering the nature of the fiduciary duty," and told to

"recognize that under trust law a fiduciary is required to conduct a regular review of its investment with the nature and timing of the review contingent on the circumstances." *Id.* at 1827–28. The Court instructed us to decide "the scope of [Edison's] fiduciary duty" to monitor investments. *Id.* at 1829.

The Court also left to us on remand "any questions of forfeiture," acknowledging Edison's contention that the beneficiaries "did not raise the claim below that [Edison] committed new breaches of the duty of prudence by failing to monitor their investments and remove imprudent ones absent a significant change in circumstances." *Id*.

A panel of our court in *Tibble v. Edison International*, 820 F.3d 1041, 1048 (9th Cir. 2016) (*Tibble V*), concluded that the issue was forfeited. We then ordered that the case be reheard en banc, so the panel's decision in *Tibble V* is vacated. *Tibble v. Edison Int'l*, 831 F.3d 1262 (9th Cir. 2016).

For the reasons discussed below, we vacate the district court's decisions concerning the funds added to the Plan before 2001, and remand for trial on an open record on the claim that, regardless of whether there was a significant change in circumstances, Edison should have switched from retail-class fund shares to institutional-class fund shares to fulfill its continuing duty to monitor the appropriateness of the trust investments. We also encourage the district court to reevaluate its fee determination in light of the Supreme Court's decision, and our decision en banc.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review summary judgment determinations *de novo*.  *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011).

**ANALYSIS**

**I.  Applicable Law**

The applicable statute of limitations in this case is the six-year limit of 29 U.S.C. § 1113(1)(A), which states that "[n]o action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . six years after [] the date of the last action which constituted a part of the breach or violation."  As the Supreme Court noted in *Tibble IV*, under this statute only a "breach or violation," not an original investment decision, need occur to start the six-year statutory period.  135 S. Ct. at 1827.

Generally, we do not "entertain[] arguments on appeal that were not presented or developed before the district court."  *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013).  "Although no bright line rule exists to determine whether a matter [h]as been properly raised below, an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it."  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (internal quotation marks omitted).

**II.  Forfeiture**

Before addressing the statute of limitations and ERISA-trust law issues remanded to us by the Supreme Court, we address Edison's claims that the issues presently on appeal

have been forfeited by the beneficiaries. We conclude that the beneficiaries did not forfeit their failure-to-monitor argument in either the district court or on appeal. Instead, we conclude that Edison itself forfeited the forfeiture argument in its initial appeal.

## A. There Was No Forfeiture by the Beneficiaries on Appeal

We begin with the appeal. The beneficiaries argued in their opening brief that:

> Defendants had a continuing duty to ensure that each of the Plans' investment options was and remained prudent and had reasonable expenses. Merely because they allowed an imprudent fund into the Plan at one point does not mean Defendants could just leave it in the Plan forever. Within six years prior to the commencement of this action, Defendants could have switched the Plan out of the retail shares and into the institutional shares of three excluded mutual funds and saved the Plan millions in unnecessary fees.[1]

---

[1] Edison attempts to obscure this clear statement with irrelevant specificity, noting that "Plaintiffs' appellate briefs also did not raise the argument . . . that the district court's summary judgment orders improperly barred plaintiffs from challenging Edison's monitoring of the pre-2001 mutual funds during the repose period, unless plaintiffs established that the funds underwent significant changes." But, having lost at trial on the merits of the "significant changes" issue, the beneficiaries argued simply that the district court should have allowed a claim that "'the last action which constituted a part of the breach'—using

Similarly, the beneficiaries argued:

> At any time in that six-year period
> Defendants could have switched from retail
> to institutional class shares. Their failure to
> do so caused the Plan to pay unnecessary,
> retail fees in each of those six years.
> Therefore, the "last action which constituted
> a part of the breach"—using retail class
> shares—occurred within six years and the
> "latest date on which the fiduciary could have
> cured the breach"—replacing retail with
> institutional shares—also occurred within six
> years.

And, the beneficiaries argued that "[f]und fiduciaries . . .
were under a continuing obligation to advise the Fund to
divest itself of unlawful or imprudent investments." (Citing
*Buccino v. Cont'l Assurance Co.*, 578 F. Supp. 1518, 1521
(S.D.N.Y. 1983)).

Thus, the beneficiaries argued on appeal for an ongoing
duty to monitor investments and to remove imprudent
investments—a duty that was not limited to "changed
circumstances." The theory was simply that: "[i]n light of
the continuing duty of prudence imposed on plan fiduciaries
by ERISA, each failure to exercise prudence constitutes a
new breach of duty, that is to say, a new claim"—squarely
embracing the theory accepted by the Supreme Court. *See*

retail class shares—occurred within six years." That the beneficiaries'
later phrasing articulated both what the district court allowed (a
significant changes theory) and what the district court rejected (a pure
continuing duty to prudently monitor) does not show forfeiture of the
latter argument. Indeed, it was specifically raised in the beneficiaries'
opening brief.

*Tibble IV*, 135 S. Ct. at 1829. In response, Edison argued for a duty that was limited to changed circumstances: "Plan fiduciaries do have a continuing duty under ERISA to monitor investment options for changed circumstances rendering a once-prudent investment now imprudent, but plaintiffs here allege no changed circumstances." The *Tibble III* panel accepted Edison's limiting theory, but the Supreme Court rejected it. The claim was not forfeited on appeal.

## B. There Was No Forfeiture by the Beneficiaries in the District Court

Nor did the beneficiaries forfeit their claim in the district court. Edison's post-trial briefing stated:

> The Court expressly held in its first summary judgment ruling that plaintiffs could not revisit the prudence of selecting mutual funds that became part of the Plan's investment lineup more than six years prior to the filing of the Complaint. *By challenging the prudence of maintaining retail share classes* of the three "name change" funds, plaintiffs have done what the Court has forbidden, by attempting to resurrect claims that were properly held barred by the six-year statute of limitations.

(Emphasis added and citation omitted). Given this contemporaneous statement that any claim challenging the prudence of maintaining retail share classes first selected before the limitations period had been rejected on summary judgment, it is hard to see how Edison can now argue that the beneficiaries forfeited the argument by not presenting "any evidence establishing that a prudent fiduciary would

have identified the alleged share-class issue during regular, periodic reviews."

Simply put, the district court held at summary judgment that because "the initial decision to add retail mutual funds" was made outside of the six-year limitations period, "the prudence claims arising out of these decisions are barred by the statute of limitations." *Tibble I*, 639 F. Supp. 2d at 1120. And, the district court stated in its trial decision: "three funds were added to the Plan before the statute of limitations period; *thus,* Plaintiffs challenged the failure to switch to an institutional share class upon the occurrence of certain significant events within the limitations period." *Tibble II*, 2010 U.S. Dist. LEXIS 69119 at *7 (emphasis added). The district court used the causal "thus" to describe why Plaintiffs relied on a "significant changes theory": because prudence claims arising out of the initial selection were outside the statute of limitations, and barred by the summary judgment order (absent changed circumstances).

Edison also pointed to the district court's questioning of the beneficiaries' expert, Dr. Steven Pomerantz, who attempted to identify changed circumstances that would have triggered a duty to switch the share class, such that the claim would not be barred by the district court's statute of limitations ruling. In conversation with Pomerantz, the district court said that it did not understand the connection between a name change of a fund and whether Edison should have switched to institutional class shares, and asked whether Edison should have removed the funds even without a name change. The court asked: "[w]ould you contend . . . that during the relevant time period due diligence would have required the plan to nevertheless buy an institutional share class, all things being equal, assuming the institutional share class had a lower fee?" Pomerantz mostly stuck to his

significant changes theory in response.  Edison argued that this exchange showed that the district court did not forbid a duty-to-monitor claim; indeed, according to Edison, the district court "*invited* Pomerantz to make [a duty-to-monitor claim] . . . , but he refused to agree," sticking to the significant changes theory.

It is certainly possible that the district court had forgotten a portion of its voluminous summary judgment ruling, and was at that time open to a theory imposing a continuing duty in the absence of "changed circumstances."  Or it could be, as the beneficiaries suggest, that the district court was checking to see whether the theory Pomerantz was articulating was in substance the same as the theory the district court had excluded.  It does not matter which interpretation is correct, because *neither shows forfeiture.* Whatever the intent behind the district court's hypothetical questions to an expert, they did not constitute a change in its earlier ruling sufficient to put the beneficiaries on notice that they could then, contrary to the court's earlier ruling, put on evidence to prove their preferred continuing duty theory.

Finally, Edison emphasizes that the district court allowed the beneficiaries to put on a continuing duty case concerning a different investment, the Money Market Fund. *See Tibble II*, 2010 U.S. Dist. LEXIS 69119 at *108–21.  It is true that the claims have much in common, and it is not clear why the district court provided a distinct treatment of the Money Market Fund.  Perhaps it was because Edison continued to negotiate the rate for the fund throughout the period at issue, while Edison employed a "set it and forget it" approach with the mutual funds.  Whatever the reason, that the district court allowed a similar claim as to the Money Market Fund simply does not show that, contrary to both sides' understanding, the beneficiaries were allowed to put

on a monitor-and-remove-absent-significant-changed-circumstances theory concerning the mutual funds.

Because the beneficiaries—and Edison—reasonably believed that the district court's summary judgment order precluded the duty to monitor claim, and because the beneficiaries preserved the claim on appeal, it has not been forfeited.

## C. Edison's Own Forfeiture

The beneficiaries argue that Edison forfeited its forfeiture argument by failing to raise it in the initial appeal. Edison did not argue forfeiture in the initial appeal consistent with its understanding, as expressed in its post-trial motion, that the district court's summary judgment ruling barred claims relating to the funds first selected before 2001.

Edison argues that it did not raise forfeiture because the beneficiaries did not articulate their continuing duty theory before they submitted their Supreme Court briefing. However, as discussed above, the beneficiaries raised the continuing duty argument in their opening brief on appeal. Edison therefore forfeited any potential forfeiture response to that argument. And, even at the Supreme Court, where the beneficiaries clearly presented their continuing duty argument in their petition for certiorari, Edison responded not that the beneficiaries had forfeited that claim, but instead, that a fiduciary only has a "duty to monitor for material changes in circumstances." (Emphasis omitted).

## III. *Phillips* Does Not Bar the Beneficiaries' Claim

In *Phillips v. Alaska Hotel and Restaurant Employees Pension Fund*, 944 F.2d 509, 520–21 (9th Cir. 1991), we held that the limitations period under a different subsection

of the ERISA statute of limitations, 29 U.S.C. § 1113(2), begins when a plaintiff has *actual knowledge* of a breach. When there is "a series of discrete but related breaches" because a fiduciary violated a continuing duty over time, the § 1113(2) limitations period does not begin anew with each related breach. *Id.*

*Phillips* followed the plain language of the statute: § 1113(2) provides that the plaintiff's "actual knowledge of the breach" is measured from "three years after the earliest date" of such knowledge. "Once a plaintiff knew of one breach, an awareness of later breaches [of the same character] would impart nothing materially new," and applying a "continuing violation theory [would] essentially read[] the 'actual knowledge' standard out of [§ 1113(2)]." *Phillips*, 944 F.2d at 520. Thus, we held that "[t]he earliest date on which a plaintiff became aware of any breach . . . start[s] the limitation period of § 1113[](2)[2] running." *Id.*

The district court in *Tibble I* misunderstood *Phillips* to stand for the broad proposition that "[t]here is no 'continuing violation' theory to claims subject to ERISA's statute of limitations." *Tibble I*, 639 F. Supp. 2d at 1086. However, *Phillips* did not reject a continuing violation theory for the ERISA statute of limitations generally; it merely held that, for claims subject to § 1113(2), the earliest date of actual knowledge of a breach begins the limitations period, even if the breach continues. When a plaintiff has actual knowledge of a breach, § 1113(2) operates to keep her from sitting on her rights and allowing the series of related breaches to

---

[2] Our opinion identified the statute as § 1113(a)(2), but quoted from and discussed § 1113(2). Because there is no subsection (a)(2) in § 1113, the reference appears to have been in error, and *Phillips'* holding applies to § 1113(2).

continue. However, when a plaintiff does not have actual knowledge of a breach of a continuing duty and § 1113(1) applies, the rationale for *Phillips'* continuing duty limit on § 1113(2) is no longer relevant. Thus, we hold that *Phillips* is inapplicable to the continuing duty claims at issue here, namely to 29 U.S.C. § 1113(1).[3]

The Supreme Court held that the fiduciary duty identified in this case is continuing in nature, and that each new breach begins a six-year limitations period under § 1113(1). The Court recognized the breach as "a fiduciary's allegedly imprudent *retention* of an investment" which results in a series of related breaches as the investment is retained over time. *Tibble IV*, 135 S. Ct. at 1826, 1828–29 (emphasis added). As the Court made clear, only a "breach or violation," such as a fiduciary's failure to conduct its required regular review of Plan investments, need occur within the six-year statutory period; the initial investment need not be made within the statutory period. *Id.* at 1827–28.

## IV. ERISA and Analogous Trust Law

The Supreme Court tasked us with resolving "the scope of [Edison's] fiduciary duty" to monitor investments, while

---

[3] The district court held that the beneficiaries' claims were governed by § 1113(1) because Edison did not produce undisputed evidence of the beneficiaries' actual knowledge of the alleged breaches, making § 1113(2) inapplicable. *Tibble I*, 639 F. Supp. 2d at 1086. We affirmed, holding that, "because the[] beneficiaries' trial claims hinged on infirmities in the selection process for investments," Edison's contention that "mere notification that retail funds were in the Plan menu" was insufficient to satisfy the "actual knowledge" standard. *Tibble III*, 729 F.3d at 1121. The Supreme Court also applied § 1113(1). *Tibble IV*, 135 S. Ct. at 1827.

"recognizing the importance of analogous trust law." *Id*. at 1829. Edison's fiduciary duty arises from ERISA, "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). "An ERISA fiduciary must discharge his responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." *Tibble IV*, 135 S. Ct. at 1828 (quoting 29 U.S.C. § 1104(a)(1)). "These duties are the highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (internal quotation marks omitted). "To enforce them, the court focuses not only on the merits of the transaction, but also on the thoroughness of the investigation into the merits of the transaction." *Id*.

ERISA fiduciary duties are derived from the common law of trusts, so "courts often must look to the law of trusts" to "determin[e] the contours of an ERISA fiduciary's duty." *Tibble IV*, 135 S. Ct. at 1828. "Under trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones . . . separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Id*. "[A] trustee cannot assume that if investments are legal and proper for retention at the beginning of the trust, or when purchased, they will remain so indefinitely." *Id*. (quoting A. HESS, G. BOGERT & G. BOGERT, LAW OF TRUSTS AND TRUSTEES § 684, 145–46 (3d ed. 2009) [hereinafter Bogert 3d]). "Rather, the trustee must 'systematic[ally] conside[r] all the investments of the trust at regular intervals' to ensure that they are appropriate." *Id*. (quoting Bogert 3d § 684, at 147–48). In fulfilling his duties, a trustee is held to "the prudent investor rule," which requires that he "invest and manage trust assets as a prudent investor would"; that is, by "exercis[ing] reasonable care, skill, and caution," and by

"reevaluat[ing] the trust's investments periodically as conditions change."  Bogert 3d § 684.

Additionally, pursuant to the Restatement (Third) of Trusts, a trustee is to "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship."  RESTATEMENT (THIRD) OF TRUSTS § 90(c)(3); *see also id.* § 88.  The Restatement further instructs that "cost-conscious management is fundamental to prudence in the investment function," and should be applied "not only in making investments but also in monitoring and reviewing investments."  *Id*. § 90, cmt. b; *see also id.* § 88, cmt. a ("Implicit in a trustee's fiduciary duties is a duty to be cost-conscious."); *Donahue v. Donahue*, 182 Cal. App. 4th 259, 273 (2010) (reversing and remanding an award for attorneys' fees incurred by a trustee because the trial court did not consider whether the trustee fulfilled his duty to be cost-conscious in incurring the fees).  As the Uniform Prudent Investor Act observes:  "Wasting beneficiaries' money is imprudent.  In devising and implementing strategies for the investment and management of trust assets, trustees are obliged to minimize costs."  Unif. Prudent Investor Act § 7.

It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks. As a simple example, if a beneficiary invested $10,000, the investment grew at a rate of 7% a year for 40 years, and the fund charged 1% in fees each year,[4] at the end of the 40-year period the beneficiary's investment would be worth

---

[4] The funds Edison offered beneficiaries had expense ratios ranging from 0.03% to 2%.  *Tibble I*, 639 F. Supp. 2d at 1117.

$100,175. If the fees were raised to 1.18%, or 1.4%,[5] the value of the investment at the end of the 40-year period would decrease to $93,142 and $85,198, respectively. Beneficiaries subject to higher fees for materially identical funds lose not only the money spent on higher fees, but also "lost investment opportunity"; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time. *Tibble II*, 2010 U.S. Dist. LEXIS 69119, at *124–25. Pursuant to the aforementioned trust law principles, a trustee cannot ignore the power the trust wields to obtain favorable investment products, particularly when those products are substantially identical—other than their lower cost—to products the trustee has already selected.

The beneficiaries request "a new trial on the issue of whether [Edison] breached [its] fiduciary duties by providing as Plan investments during the limitations period mutual funds in a share class that was more expensive than other share classes that were available to the Plan." (Citing *Lam v. Univ. Of Haw.*, 40 F.3d 1551, 1554–55, 1566–67 (9th Cir. 1994) (remanding for trial after reversal of summary judgment)). The beneficiaries wrote that "[b]ecause [they] were precluded from presenting [the continuing-duty-absent-changed-circumstances] claims by the district court's erroneous interpretation of the limitations statute, there is no record on which the Court can resolve this claim on appeal." We agree that the record does not establish exactly what would have resulted from the application of the correct legal standard, and accordingly remand on an open record for the

---

[5] The district court found that, for Edison's six retail class funds that had institutional class funds available, each retail fund's fees were 0.18% to 0.4% higher than the corresponding institutional funds' fees over the 2001–2009 period. *Tibble II*, 2010 U.S. Dist. LEXIS 69119, at *26–41.

district court to consider these issues in light of the principles explicated by the Supreme Court and this opinion.

## V. Attorneys' Fees and Costs

The beneficiaries also requested that we direct the district court "to reconsider an award of costs and attorney fees in light of the results of the trial on remand." The beneficiaries had originally sought nearly $2.5 million in attorneys' fees and nontaxable costs, and in response to the court's order, sought a reduced amount of $407,277.30 in fees and $3,731.92 in costs. The district court held that even if the attorneys' fees request was appropriate, it would be offset by the costs due to Edison as the prevailing party on the majority of claims originally filed.

In determining that the beneficiaries' original fee request should be drastically reduced, the district court expressed its skepticism concerning the importance of the beneficiaries' partial victory. Considering the Supreme Court decision that followed, and our en banc decision in this case, we believe that this case has far greater importance than the district court believed it did at the time of its earlier fee determinations. Accordingly, we direct the district court to reconsider the fee issue in light of the significant amount of work that has been required to vindicate an important ERISA principle in our court and the Supreme Court.

## CONCLUSION

We **VACATE** the district court's decisions concerning the funds added to the Plan before 2001, and **REMAND** on an open record for trial on the claim that, regardless of whether there was a significant change in circumstances, Edison should have switched from retail-class fund shares to institutional-class fund shares to fulfill its continuing duty to

monitor the appropriateness of the trust investments. The district court is also directed to reevaluate its fee determination in light of the Supreme Court's decision and this court's en banc decision.